## INGERSOLL *v.* CORAM.

### CERTIORARI TO THE UNITED STATES CIRCUIT COURT OF APPEALS FOR THE FIRST CIRCUIT.

No. 8.  Argued March 11, 12, 1908.—Decided December 7, 1908.

In this case the Circuit Court had jurisdiction under the provision of the act of March 3, 1875, 18 Stat. 470, 472, to enforce a lien for professional services, on property within the district, although some of the defendants did not reside therein.

An objection to the jurisdiction of the Circuit Court based on the residence of defendant, although diverse citizenship exists, may be waived, and is waived if not seasonably made.  *In re Moore*, 209 U. S. 490.

A decree in a suit in the Circuit Court between citizens of different
States is not violative of ·§ 720, Rev. Stat., because it determines
liens on distributive shares in an estate under administration in a
state probate court and enjoins transmission of that share to the
original administrator until satisfaction of the lien.

*Quære,* whether it is within the power of a state court to order property
on which there is an asserted lien to be sent out of the district, thereby
defeating the jurisdiction of the Circuit Court to enforce the lien
under the act of March 3, 1875, 18 Stat. 470, 472.

The fact that proceedings for the administration of an estate are pend-
ing in the probate court does not deprive the Circuit Court of the
United States of jurisdiction to determine whether a lien exists in
favor of citizens of another State on some of the distributive shares,
the lien only to be enforced after the probate court shall have finished
its functions.

Section 629, Rev. Stat., does not deprive the Circuit Court of jurisdic-
tion of an action brought by a citizen of another State against an
administrator to enforce a lien on the distributive share of an heir
of defendant's intestate because that heir being of the same State
as the defendant could not sue him. in the Circuit Court.

An ancillary administrator in one jurisdiction is not in privity with
an ancillary administrator in another jurisdiction, and a judgment
against the one is not *res judicata* and a bar to a suit by the other.
*Brown* v. *Fletcher's Estate,* 210 U. S. 82.

Where the case in which counsel is employed on a contingent fee is so
settled that the clients receive as much as though the contingency
on which the fee depends were realized, and the settlement is achieved
after a trial and by the services of the counsel, his contract is per-
formed and he is entitled to the agreed compensation.

An express executory agreement in writing whereby the contracting
party sufficiently indicates an intent to make some identified prop-
erty security for a debt or other obligation, creates an equitable lien
on such property; and in this case an agreement by contestants to
pay counsel a contingent fee if the propounding of a will is prevented,
created a lien on the distributive shares in the estate to which those
contestants became entitled on a settlement of the matter effected
by the successful services of the counsel so employed.

148 Fed. Rep. 169, reversed; 136 Fed. Rep. 689, modified and affirmed.

THE petitioner, as administratrix of the estate of Robert G.
Ingersoll, deceased, sued the respondents and certain other
persons. in the Circuit Court of the United States for the Dis-

trict of Massachusetts, to subject certain interests in the estate of Andrew J. Davis to a lien which is alleged to have accrued to her intestate by the agreement which is set out in the opinion, and by the laws of Montana, in which State the services were rendered.

Andrew J. Davis, a man of great wealth, a citizen of Montana, died, leaving property in that State and in Massachusetts. By a will, which was offered for probate in Montana, all of his property was left to his brother, John A. Davis. Certain other of his next of kin, five in number (referred to in the bill as the "five heirs"), associated to contest the probate of the will. Henry A. Root, one of the respondents, and a nephew of Andrew J. Davis, agreed with the four other contestants to conduct the litigation and to procure evidence and counsel at his own expense, receiving therefor an assignment of a part of the prospective distributive shares of the others. Joseph A. Coram, another respondent, also acquired an interest in the prospective shares of some of the contestants. Robert G. Ingersoll, the petitioner's intestate, was engaged as counsel to conduct the litigation, and Root and Coram entered into the agreement with him, which will hereafter be set out.

Upon the trial of the contest the jury disagreed. Pending the preparation for the second trial an agreement of compromise was made, by which Ingersoll's clients received a larger portion of the estate than though Davis had died intestate. It is alleged that this was the result of Ingersoll's services as counsel. "By reason," it is alleged, "and in consideration of the prosecution of said contests, and the force, effect, and stress thereof, as against the proponent of such alleged will, in preventing the admission thereof to probate, and in consideration of the determination of said controversy and litigation, and for no other consideration or reason," was the compromise effected. It is hence further alleged that the "will was defeated in so far as it could affect the rights, shares, or interest in and to said estate of said five heirs mentioned in

said agreement and promise made and delivered by said Root
and Coram to said Robert G. Ingersoll, for as much as they were
entitled to only $\frac{350}{1100}$ of said estate as such heirs at law of
Andrew J. Davis, deceased, and got absolute right and title
to 515½ eleven-hundreths thereof, through the prosecution of
said contests and decree determining the same." Two hun-
dred and fifty eleven-hundredths, it is alleged, were allotted
directly to said five heirs and 265½ eleven-hundredths, for their
use and benefit, to Charles H. Palmer (a respondent here)
and Andrew J. Davis, Jr., trustees. A copy of the decree was
annexed to the bill and made part of it. And it is alleged
that by reason of said agreement and the fulfillment thereof
and the "provisions of the laws and statutes of Montana,"
which are set out, an attorney's lien accrued in favor of said
Ingersoll and his legal representatives, "and is existing and
is in force and effect upon the portions, parcels, and interests
of, in and to the funds and other property of said Andrew J.
Davis, deceased, so acquired for said five heirs." That Root
and Coram have conveyed away the real estate vested in them
by the decree determining the said will contests, and that the
distributions under said decree "have practically exhausted
the funds and property of said estate in the State of Montana,
and that by reason of the employment of Ingersoll and the
services rendered by him and by the promises of payment an
equitable lien exists on the funds and effects acquired by said
heirs, situate in Boston, Mass.," and that such funds and effects
should not be distributed or carried away "in default of pay-
ment of said indebtedness owing by Root and Coram to the
estate and legal representative of Robert G. Ingersoll, de-
ceased, but that said funds and effects situate in Boston, Mass.,
should be and remain subject to said indebtedness, and to be
resorted to for the payment thereof."

It is alleged that John H. Leyson is the duly appointed,
qualified and acting administrator of the estate of Andrew J.
Davis, deceased, situate in Massachusetts, and has custody of
the funds and effects acquired by Root and his associates, and

upon which the said lien exists in favor of the estate and legal representatives of Ingersoll, and that if such funds and effects should be distributed the lien will be defeated.

The death of Ingersoll in the State of New York is alleged, and the appointment of Eva A. Ingersoll, administratrix, by the Surrogate's Court of the county of Westchester, of that State, and her qualification. And it is alleged that she was subsequently appointed administratrix of his estate by the Probate Court of the county of Suffolk, Commonwealth of Massachusetts, situate in that Commonwealth, and that she duly qualified as such. It is alleged that the estate of Andrew J. Davis, situate in Boston, and in the hands of said John H. Leyson as administrator, consists of money, convertible stocks and bonds of the value of $450,000, after paying expenses of administration, of which funds and effects Coram and other parties for whom Ingersoll prosecuted said will contest are entitled by virtue of the decree of the District Court of the State of Montana, directly and through Charles H. Palmer and Andrew J. Davis, Jr., to 515½ eleven-hundredths, "acquired as part of the fruits of the labors of said Robert G. Ingersoll in the prosecution of said will contests." That Root, Coram and their associates have petitioned the Probate Court of Suffolk County to order distribution of said shares of said funds and effects to them. That all of said 515½ eleven-hundredths, except the interest owned by Sarah Maria Cummings and the interest owned by Ellen S. Cornue, are subject to the lien of Ingersoll. It is alleged that the interests of Elizabeth S. Ladd and Mary L. Dunbar have been transferred to Root and Coram.

A conspiracy and purpose of Coram and Root to defeat the lien of Ingersoll are alleged, and that distribution of the estate in Massachusetts is sought as a means thereto; further, that if the funds and effects be removed from Massachusetts or distributed to Root and Coram before the representatives of said Ingersoll have an opportunity to enforce their lien, the same will be placed beyond their reach and the payment of

the indebtedness secured thereby defeated; that the funds and effects remaining in Montana will be required and used to pay indebtedness and expenses of administration there; and that Root and Coram have no tangible property other than their shares and interest in the estate of Davis.

It is further alleged that petitioner brought suit in the District Court of the State of Montana in her name, as administratrix of Robert G. Ingersoll, to enforce payment of said claim existing in favor of the estate and legal representatives of Ingersoll. That Root and the other defendants therein appeared and demurred to the complaint on the ground that the same did not state facts sufficient to constitute a cause of action, but did not specify or raise the objection that she was not qualified to prosecute said suit, although she alleged her appointment as administratrix by the Surrogate's Court of New York. That upon her urging the pendency of said suit against the petition for distribution filed by Root and Coram and their associates, it was objected that said suit had not been brought by an administrator of Ingersoll appointed in Montana. The court sustained the objection. That thereupon John S. Harris was appointed administrator in Montana, and substituted in said suit for respondent. The cause coming on to be heard in the District Court of Montana, Root objected to the introduction of any evidence, on the ground that the complaint therein did not state facts sufficient to constitute a cause of action. The motion was sustained, and without further proceedings the court granted a nonsuit and dismissed the complaint on the alleged ground that it did not state facts sufficient to constitute a cause of action, in consequence no trial thereof has been had, nor has the claim and lien of Ingersoll ever been adjudicated, nor is it barred by any statute of limitation.

The bill prays an injunction against Leyson to restrain him from delivering. and against respondents to restrain them from receiving, said funds and effects and for the appointment of receiver, discovery of Coram's interest, and judgment for

the same, and that it be declared a lien on such interest. Judgment is prayed against Root for $95,000, with interest, and that the sum be declared a lien on his shares and interests. What else is prayed need not be noticed.

There were demurrers to the bill that went to the parties, the jurisdiction of the court, to the merits, and that the judgment of the District Court of Montana constituted a bar. The grounds of demurrer to jurisdiction were expressed in the demurrer filed by Root and Coram and Herbert P. Cummings, executor of the last will and testament of Sarah Maria Cummings, one of the five heirs, as follows:

"2. These defendants also demur to the bill of complaint upon the further ground that this court has not jurisdiction of this action, because it appears from the said bill that this action is brought to secure from this court a writ of injunction staying proceedings now pending in the Probate Court, in and for the county of Suffolk and Commonwealth of Massachusetts, to distribute the funds and effects of the estate of Andrew J. Davis, deceased, situate in the State of Massachusetts, among the persons entitled thereto, or to otherwise dispose of said funds and effects, and this court is forbidden by section 720 of the United States Revised Statutes from granting a writ of injunction to stay proceedings in any court of a State."

The demurrer of Leyson was more general, stating that the court "had no jurisdiction to grant the relief prayed for in the bill of complaint or any part thereof." And Andrew J. Davis particularized this by the specification that to enjoin the disposition of property in the hands of Leyson as administrator "would be an interference with the proceedings of the Probate Court of Suffolk County having jurisdiction of the matter, and would be unauthorized and illegal."

The demurrers were overruled except as against certain parties, and except so far as the bill claimed a statutory lien. The court said: "No statutory lien can be maintained, and that portion of the bill must be regarded as ineffectual; and as it is specially demurred to, it must be stricken out." **127**

Fed. Rep. 418. The bill was amended in compliance with the order of the court, making Charles H. Ladd, individually and as administrator of the estate of Elizabeth S. Ladd, a party. The bill, however, was subsequently ordered to be dismissed as to him, Mary Louise Dunbar (one of the five heirs), and Herbert P. Cummings, executor. 132 Fed. Rep. 168. They seem, however, to have been regarded as parties until the final disposition of the case, for they joined Coram, Root and Palmer in an answer. Leyson filed a separate answer. In the answers some of the allegations of the bill were denied and others admitted. The answers also pleaded in bar of the suit the proceedings and judgment in the action brought in the District Court of Silver Bow County, State of Montana. Proofs were taken, the allegations of the bill were found to be true and a decree entered for petitioner. 136 Fed. Rep. 689. Root, Coram and Palmer took an appeal to the Circuit Court of Appeals, the other respondents declining to join them, which court reversed the decision by a divided court. 148 Fed. Rep. 169. This certiorari was then granted.

*Mr. E. N. Harwood* and *Mr. Hannis Taylor*, with whom *Mr. Hollis R. Bailey* and *Mr. John H. Hazelton* were on the brief, for petitioner:

The commencement and non-suit or dismissal of an action in Montana, by such proceedings as were had in the *Harris case*, even if the plaintiff had title to and right of action upon, the claim which he attempted to prosecute, would not, under the rules of law governing the effect of such proceeding, create or constitute a bar to another action for the same cause. *Homer* v. *Brown*, 16 How. 354; *Manhattan Insurance Co.* v. *Broughton*, 109 U. S. 121; *Gardner* v. *Mich. Cent. R. Co.*, 150 U. S. 349; *McComb* v. *Frink*, 149 U. S. 629; *Hughes* v. *United States*, 4 Wall. 232; *Canal Co.* v. *Gordon*, 6 Wall. 561; *Keller* v. *Stolzenbach*, 20 Fed. Rep. 47; *Wilbur* v. *Gilmore*, 21 Pick. 252; *Bridge* v. *Sumner*, 1 Pick. 370; *Clapp* v. *Thomas*, 5 Allen (Mass.), 158; *Borden* v. *Thomas*, 99 Massachusetts, 200; *Hub-*

*bard* v. *Hooker*, 102 Massachusetts, 202; *Fleming* v. *Hawley*, 65 California, 492; *Gummer* v. *Trustees &c.*, 50 Wisconsin, 247; Note on Non-suit and cases, 49 Am. St. R. 831; Freeman on Judgments, § 261; Montana Code of Civil Procedure, §§ 1004, 1111, 1112, 1196, 3453; *Green* v. *Montana Brewing Co.*, 32 Montana, 110; *Gilman* v. *Rives*, 10 Pet. 301; *Kleindschmidt* v. *Binzel*, 14 Montana, 31; Montana Compiled Statutes of 1887, 118, 119.

A judgment that a declaration is bad in substance, which alone and not matter of form is the ground of a general demurrer, can never be pleaded as a bar to a good declaration for the same cause of action.

The judgment is in no sense a judgment on the merits. The rule of law is thus declared by this court and many others without the aid of statute and is so declared in Montana according to the general rule and pursuant to statutes. And see *Gilman* v. *Rives*, 10 Pet. 301; *Kleindschmidt* v. *Binzel*, 14 Montana, 31; *Glass* v. *Basin & Bay St. M. Co.*, 34 Montana, 88; *Kirsch* v. *Kirsch*, 113 California, 56; *Hardenburg* v. *Bacon*, 33 California, 356; *Los Angeles* v. *Mellus*, 59 California, 452; approved in *City &c.* v. *Clark*, 62 Fed. Rep. 697; approved in *Gilmer* v. *Morris*, 30 Fed. Rep. 481; *Lockett* v. *Lindsay*, 1 Idaho, 324; *Wilbur* v. *Gilmore*, 21 Pick. 253; *Garrish & Brewster* v. *Pratt & Bunker*, 6 Minnesota, 53; *Rodman* v. *Michigan Central R. Co.*, 59 Michigan, 395; *Carmony* v. *Hoober*, 5 Pa. St. 307; *Moore* v. *Dunn*, 41 Ohio St. 62; *Stevens* v. *Dunbar*, 1 Blackf. (Ind.) 56; *Estep* v. *Larsh*, 21 Indiana, 190; *Hassell* v. *Nutt*, 14 Texas, 265.

The administrator appointed in Montana had no title to the chose in action on which this suit is founded. That the law, by virtue of the facts shown, vested in Eva A. Ingersoll, as administratrix, title to said chose in action and that the debtors thereon, wheresoever residing, could safely pay said administratrix and her receipt would protect them everywhere, is settled, beyond dispute, by the authorities. *Wilkins* v. *Ellett*,

9 Wall. 740; *Harper* v. *Butler*, 2 Pet. 239; *Wyman* v. *United States*, 109 U. S. 654; *Thorn* v. *Watkins*, 2 Ves. Sen. 36; *Eells, Admr.,* v. *Holder*, 12 Fed. Rep. 668; *May* v. *County of &c.,* 30 Fed. Rep. 250; *Van Bokkelen* v. *Cook*, 5 Sawy. 591; *S. C.,* Fed. Cas. No. 16,831; *Rand, Admr.,* v. *Hubbard*, 4 Metc. 252; *Pinney, Admr.,* v. *McGregory*, 102 Massachusetts, 186; *Petersen* v. *Chemical Bank*, 32 N. Y. 21; *St. John* v. *Hodges,* 68 Tennessee (9 Baxt.), 334; *In re Cape May & D. B. N. Co.,* 51 N. J. L. 82; *Gove* v. *Gove*, 64 N. H. 503.

Administrators of an intestate appointed in different States have no privity with each other in law or in estate. See opinion below and *Aspden* v. *Nixon*, 4 How. 467, 497; *Stacy* v. *Thresher*, 6 How. 44, 59; *Johnson* v. *Powers*, 139 U. S. 156; *Carpenter* v. *Strange*, 141 U. S. 87.

The effect given to said judgment of non-suit, by the ruling of the Court of Appeals in the case at bar, deprives the legal representative of Ingersoll of property without due process of law. *Fayerweather* v. *Ritch*, 195 U. S. 276; *Chicago, B. & Q. R. R. Co.* v. *Chicago*, 166 U. S. 226, 234; *Martin* v. *Texas*, 200 U. S. 316.

There is a lien existing in favor of complainant, by virtue of the Montana statute, and also by virtue of principles of equity independent of statute, to secure payment for Ingersoll's services. *Coombe* v. *Knox*, 28 Montana, 202; *Justice* v. *Justice*, 115 Indiana, 201; *Fillmore* v. *Wells*, 10 Colorado, 228; *S. C.,* 3 Am. St. Rep. 567; *Newbert* v. *Cunningham*, 50 Maine, 231; *S. C.,* 79 Am. Dec. 621; *Wylie* v. *Coxe*, 15 How. 415.

Rights can and do have extraterritorial effect, and it makes no difference whether they were created by statute law, or common law, or by contract, will, decree or other effectual means. *Dennick* v. *Cent. R. R. Co.,* 103 U. S. 11; *Smith* v. *Condry*, 1 How. 29; *Nor. Pac. Ry. Co.* v. *Babcock*, 154 U. S. 190.

Both Federal and state courts constantly enforce rights founded upon the laws of other States, "whether the right

of action be *ex contractu,* or *ex delicto.*" *Texas* v. *White,* 10 Wall. 483; *Nor. Pac. Ry. Co.* v. *Babcock,* 154 U. S. 190; *Dennick* v. *Cent. R. R. Co.,* 103 U. S. 11; *Smith* v. *Condry,* 1 How. 29; *Huntingdon* v. *Attrill,* 146 U. S. 657.

The courts of the United States take judicial notice of and administer the laws of the States of the Union in cases to which they respectively apply, and enforce rights created thereby. *Owings* v. *Hull,* 9 Pet. 607; *Merchants' Exchange Bank* v. *McGraw,* 59 Fed. Rep. 972; *Bank* v. *Franklyn,* 120 U. S. 747; *Lamar* v. *Micou,* 114 U. S. 218; *Gormley* v. *Bunyan,* 138 U. S. 623.

There are many cases which directly sustain the attorney's equitable lien foreclosed in the case at bar, such as: *Meddaugh* v. *Wilson,* 151 U. S. 333; *Central R. R. Co.* v. *Pettus,* 113 U. S. 116; *Louisville & St. L. Ry. Co.* v. *Wilson,* 138 U. S. 501; *Cowdry* v. *Galveston Ry. Co.,* 93 U. S. 352; *Semmes* v. *Whitney,* 50 Fed. Rep. 666; *Mahone* v. *Southern Tel. Co.,* 33 Fed. Rep. 702, approved in 138 U. S. 507; *Frink* v. *McComb,* 60 Fed. Rep. 486; *Tuttle* v. *Claflin,* 31 C. C. A. 419; *Needles* v. *Smith,* 32 C. C. A. 226; *Foster* v. *Danforth,* 59 Fed. Rep. 750; *Weeks* v. *Wayne Cir. Judge,* 73 Michigan, 256; *Carpenter* v. *Meyers,* 90 Michigan, 209; *Justice* v. *Justice,* 115 Indiana, 201; *Stratton* v. *Hussey,* 62 Maine, 286.

To the questions propounded by the court [1] counsel answer: 1. The Circuit Court has jurisdiction to ascertain and declare a lien upon property in the possession of the administrator appointed by the Probate Court for the County of Suffolk and State of Massachusetts.

The case at bar has in view the establishment of a lien on certain shares of funds and effects, which, although now in the hands of an administrator of an estate already settled, with the exception of possibly a few minor details, as shown without dispute, will be distributed to the parties holden for the debt secured by that lien.

---

[1] See *post,* p. 354.

The administrator is a necessary party for the purpose of the suit and to protect the lien on the shares in his hands subject thereto, which he will have for distribution to the parties holden for the debt secured by the lien. The lien can only be established and protected by a court of equity jurisdiction. *Hauselt* v. *Harrison*, 105 U. S. 401; *Fletcher* v. *Morey*, 2 Story, 555; *S. C.,* Fed. Cas. No. 4,864, per Story, J.; *Pinch* v. *Anthony*, 8 Allen (Mass.), 336; *Hovey* v. *Elliot*, 118 N. Y. 124.

No Probate Court, as such, could adjudicate the question of debt and the existence of the lien involved in the case at bar. *Perris* v. *Higley*, 20 Wall. 375.

No abridgment of the equity jurisdiction of state courts by state law would restrict or impair the chancery jurisdiction of the Federal court sitting in that State. *Payne* v. *Hook*, 7 Wall. 425; *Kendall, Admr.,* v. *Creighton*, 23 How. 90; *Holland* v. *Challen*, 110 U. S. 15; *Gormley* v. *Clark*, 134 U. S. 338; *Bardon* v. *Land Imp. Co.*, 157 U. S. 327; *Rich* v. *Braxton*, 158 U. S. 405; *Smyth* v. *Ames*, 169 U. S. 466, 516.

A controversy as to the existence of a debt and lien on property to secure it, or other equitable right in property in the hands of an administrator or executor, may be adjudicated and determined by a court of equity without seizing or taking actual possession of the property on which the lien rests. *Wylie* v. *Coxe*, 15 How. 415; *McComb* v. *Frink*, 149 U. S. 629; *Canfield* v. *Canfield*, 56 C. C. A. 169; *S. C.,* 118 Fed. Rep. 1; *Richardson* v. *Green*, 9 C. C. A. 565; *S. C.,* 61 Fed. Rep. 423; *Van Bokkelen* v. *Cook*, 5 Saw. 587; *S. C.,* Fed. Cas. No. 16,831; *Snyder's Admr.* v. *McComb's Exr.*, 39 Fed. Rep. 292.

As a Massachusetts court of equity would apply the remedies which have been applied in the case at bar, to protect and enforce complainant's equitable right in the funds in the hands of the administrator, although they be in probate administration, so may the Federal Circuit Court, sitting in Massachusetts, apply the same equitable remedies to a case cognizable in chancery, even though it be an enlarged remedy given

by statute. *Clark* v. *Smith*, 13 Pet. 194, 203, 204; *Gaines* v. *Fuentes*, 92 U. S. 10; *Gormley* v. *Clark*, 143 U. S. 338; *Holland* v. *Challen*, 110 U. S. 15; *Bardon* v. *Land & R. Imp. Co.*, 157 U. S. 327; *Rich* v. *Braxton*, 158 U. S. 405; *Smyth* v. *Ames*, 169 U. S. 466, 516; *Richardson* v. *Green*, 9 C. C. A. 565; *S. C.*, 61 Fed. Rep. 423.

2. The Circuit Court has jurisdiction to enforce by foreclosure a lien upon property so situated. See 3 Pomeroy's Eq. Juris. § 1339; *Hauselt* v. *Harrison*, 105 U. S. 401; *Milner* v. *Metz*, 16 Pet. 221; *Dulaney* v. *Scudder*, 36 C. C. A. 52; *S. C.*, 94 Fed. Rep. 6; *Phelps* v. *McDonald*, 99 U. S. 298, 308; *McKinney* v. *Curtiss*, 60 Michigan, 611; *Sherman* v. *Am. Stove Co.*, 85 Michigan, 169; *Smith Co.* v. *Skinner*, 91 Hun, 641; *Lewis* v. *Doge*, 17 How. Pr. 229; *Keller* v. *Payne*, 1 N. Y. Supp. 148; *Hendrix* v. *Morrill*, 6 N. Y. Supp. 254.

3. The Circuit Court has jurisdiction to determine the shares of Root and Coram in the property so situated. See *Hauselt* v. *Harrison*, 105 U. S. 401; *Phelps* v. *McDonald*, 99 U. S. 298, 308; *Byers* v. *McAuley*, 149 U. S. 608; *Mayer* v. *Foulkrod*, Fed. Cas. No. 9,341; *Gaines* v. *Fuentes*, 92 U. S. 10; *Payne* v. *Hook*, 7 Wall. 425; *Dodd* v. *Ghiselin*, 27 Fed. Rep. 405; *Sullivan* v. *Andoe*, 6 Fed. Rep. 641; *Dennick* v. *Central Ry. Co.*, 103 U. S. 11; *Wylie* v. *Coxe*, 15 How. 415.

4. The Circuit Court has jurisdiction, upon the pending bill, either in its present form or as it might be amended, to direct that Leyson, Root, Coram, or either of them, should hold any property coming into their hands by order of distribution of the Probate Court, upon the trust to satisfy the claim of the complainant. 3 Pomeroy's Equity Juris. § 1339; *Hauselt* v. *Harrison*, 105 U. S. 401; *Cole* v. *Cunningham*, 133 U. S. 107.

5. The Circuit Court will confine its action to the determination, protection and enforcement of the equitable rights of the citizen of a different State than that of the administrator. *Byers* v. *McAuley*, 149 U. S. 608; *Sherman* v. *American Cong. Assn.*, 51 C. C. A. 329; *S. C.*, 113 Fed. Rep. 609.

6. Whatever equity jurisdiction is vested in the Probate

Court of Massachusetts, must be exercised independently of their ordinary probate jurisdiction. *Sherman* v. *Am. Cong. Assn.*, 113 Fed. Rep. 609, and cases cited. The jurisdiction in equity given to the Probate Court of Massachusetts by Stat. 1891, c. 415, § 1, is a jurisdiction concurrent with that of other equity courts. *Bennett* v. *Kimball*, 175 Massachusetts, 199. The Probate Court's possession is for certain prescribed administrative purposes. It has no possession that excludes established chancery jurisdiction over equitable rights touching the property. The chancery jurisdiction is not different in Massachusetts. And if it were different there, by virtue of state law, the equity jurisdiction of the Federal court would not be thereby impaired.

*Mr. Louis D. Brandeis*, with whom *Mr. William H. Dunbar* was on the brief, for respondents:

The appellant (petitioner) has not established the existence of any lien on any interest of any of the defendants in the estate of Andrew J. Davis in Massachusetts.

No lien can be maintained unless an equitable lien was created by act of the parties. No statutory lien can be maintained. It is not now open to appellant to assert the existence of a statutory lien. *Landram* v. *Jordan*, 203 U. S. 56; and cases there cited. The Montana statute could not create a lien upon property in Massachusetts. The Montana statute does not create a lien in a will contest. Montana Code of Civil Procedure, § 430; *Smith* v. *Central Trust Co.*, 4 Dem. (N. Y. Surr.) 75; *In the Matter of Lexington Avenue*, 30 App. Div. (N. Y.) 602; *S. C.*, 157 N. Y. 678; Montana Code of Civil Procedure, §§ 3471, 3472; *Reed* v. *Reed*, 31 Fed. Rep. 49; *In re Cilley*, 58 Fed. Rep. 977; *Wahl* v. *Franz*, 100 Fed. Rep. 680.

There is no attorney's lien apart from the statute. *Welsh* v. *Hole*, 1 Douglas, 238; *Barker* v. *St. Quinton*, 12 Mees. & W. 451; *Mercer* v. *Graves*, L. R. 7 Q. B. 499. 503; *Fillmore* v. *Wells*, 10 Colorado, 228, 231; *McCullough* v. *Flournoy*, 69 Alabama,

189; *Cozzens* v. *Whitney,* 3 R. I. 79; *Smalley* v. *Clark,* 22 Vermont, 598; *Forsythe* v. *Beveridge,* 52 Illinois, 268; *Braden* v. *Ward,* 42 N. J. L. 518; *Goodrich* v. *McDonald,* 112 N. Y. 157; *McDonald* v. *Napier,* 14 Georgia, 89, 110; *Frissell* v. *Haile,* 18 Missouri, 18; *Ward* v. *Sherbondz,* 96 Iowa, 477; *Wells* v. *Hatch,* 43 N. H. 246; *Baker* v. *Cook,* 11 Massachusetts, 236; *Gregory* v. *Pike,* 67 Fed. Rep. 837.

There is no equitable lien created by contract. In the present case there was not even a promise to pay from a particular fund. An equitable lien is not created by a promise to pay from a specified fund unaccompanied by some sort of assignment. This rule has long been the settled law of this court. *Wright* v. *Ellison,* 1 Wall. 16; *Christmas* v. *Russell,* 14 Wall. 69; *Trist* v. *Child,* 21 Wall. 441; *Dillon* v. *Barnard,* 21 Wall. 430; *Removal Cases,* 100 U. S. 457. The rule laid down by this court in the foregoing cases has been followed as the established law of the Federal courts. *Ex parte Tremont Nail Co.,* 24 Fed. Cas. 183; *In re Butler's Estate,* 105 Fed. Rep. 549; *Strang* v. *Richmond P. & C. Ry. Co.,* 101 Fed. Rep. 511; *Columbus, S. & H. R. Co. Appeals,* 109 Fed. Rep. 177, 197; *Cushing* v. *Chapman,* 115 Fed. Rep. 237; *Boyle* v. *Boyle,* 116 Fed. Rep. 764. The law is the same in other jurisdictions. *Bradley's Case,* Ridgeway's Reports, 194; *Newell* v. *West,* 149 Massachusetts, 520; *Rogers* v. *Hosack's Executors,* 18 Wend. 319; *Williams* v. *Ingersoll,* 89 N. Y. 508; *Cameron* v. *Boeger,* 200 Illinois, 84. None of the acts set out in the bill of complaint done after Ingersoll's death created a lien. *Christmas* v. *Russell,* 14 Wall. 69; *In re Butler's Estate,* 105 Fed. Rep. 549. The cases cited by the appellant (petitioner) do not support the contention that an equitable lien exists.

The appellant (petitioner) has failed to show that there is any property in Massachusetts that can be subjected to a lien for the alleged debt. There is no property of the defendants in Massachusetts.

Any property in Massachusetts not distributed under the will can be disposed of only by transmission to Montana, to

be distributed as the court there shall determine. In no case is there any property in Massachusetts that can be subjected to a lien in favor of the creditors of these defendants or upon which these defendants could create a lien. *Boston* v. *Boylston,* 2 Massachusetts, 384; *Clark* v. *Blackington,* 110 Massachusetts, 369; *Cowden* v. *Jacobson,* 165 Massachusetts, 240, 243; *Holcomb* v. *Phelps,* 16 Connecticut, 127; *Walton* v. *Hall,* 66 Vermont, 455; *Elder* v. *Adams,* 180 Massachusetts, 303, 306; *Lawrence* v. *Wright,* 23 Pick. 128, 129; *Clapp* v. *Inhabitants of Stoughton,* 10 Pick. 462; *Pritchard* v. *Norwood,* 155 Massachusetts, 539; *Flynn* v. *Flynn,* 183 Massachusetts, 365. See *Duchesse d'Auxy* v. *Soutter,* 35 Fed. Rep. 809; *Gardner* v. *Gantt,* 19 Alabama, 666; *Dugger* v. *Tayloe,* 60 Alabama, 504; *Costephens* v. *Dean,* 69 Alabama, 385; *Hickox* v. *Frank,* 102 Illinois, 660; *Alexander* v. *Stewart,* 8 Gill & J. 226; *Downing* v. *Porter,* 9 Massachusetts, 386; *Stills* v. *Harmon,* 7 Cush. 406; *Taylor* v. *Brooks,* 3 Dev. & Bat. 139; *Bradford* v. *Felder,* 2 McCord, Ch. 168; *Kaminer* v. *Hope,* 9 S. Car. 253; *Strickland* v. *Bridges,* 21 S. Car. 21. It is immaterial what contractual rights not amounting to a title the defendants may have in respect to the estate in Massachusetts. *Eyre* v. *Potter,* 15 How. 42; *Grosholz* v. *Newman,* 21 Wall. 481; *Andrews* v. *Farnham,* 2 Stockton, 91; *Stucky* v. *Stucky,* 30 N. J. Eq. 546, 554.

The judgment in the suit brought in Montana is a bar to the maintenance of this suit. Harris as ancillary administrator in Montana had power to bring the suit. The suit was brought by Harris as ancillary administrator, with full knowledge, consent and authority of the principal administratrix. The suit was maintainable by an ancillary administrator without any assignment from the domiciliary administratrix. The doctrine that personal property has a *situs* only at the domicil of the owner is a rule of convenience that never applied to the question of *situs* for purposes of administration, and that for all purposes is limited in its scope. Upon the death of the creditor the *situs* of the debt for purposes of dealing with it as property is recognized as the domicil of the debtor precisely

as if the debt were a chattel. *Blackstone* v. *Miller*, 188 U. S. 189; *Wyman* v. *Halstead*, 109 U. S. 654, 656; *Cunnius* v. *Reading School Dist.*, 198 U. S. 458; *New England Mut. L. Ins. Co.* v. *Woodworth*, 111 U. S. 138. By virtue of his appointment an ancillary administrator acquires power to deal with the assets within his jurisdiction. *Wilkins* v. *Ellett*, 108 U. S. 256; *New Eng. Mut. L. Ins. Co.* v. *Woodworth*, 111 U. S. 138. An ancillary administrator may bring suit against persons within his jurisdiction to collect simple contract debts due the deceased without requiring or receiving any assignment or authority from the principal administrator. *New Eng. Mut. L. Ins. Co.* v. *Woodworth*, 111 U. S. 138; *Equitable Life Ass. Society* v. *Brown*, 187 U. S. 308; *Noonan* v. *Bradley*, 9 Wall. 394; *Pinney* v. *McGregory*, 102 Massachusetts, 186; *Sulz* v. *Mut. Res. Fund*, 145 N. Y. 563; *Fox* v. *Carr*, 16 Hun, 434; *Traflet* v. *Empire Life Ins. Co.*, 64 N. J. L. 387. So far as property in a foreign jurisdiction is concerned, the domiciliary administrator has no right nor title that can conflict with the title of the ancillary administrator. *Gove* v. *Gove*, 64 N. H. 503; *Bowdoin* v. *Holland*, 10 Cush. 18, 21. The presence in New York of the letter of August 17, 1891, is immaterial. *Blackstone* v. *Miller*, 188 U. S. 189, 206; *Buck* v. *Beach*, 206 U. S. 392, 403.

The suit in Montana was upon the same cause of action and upon the same facts set up in the present suit.

The judgment in Montana was valid.

The judgment in the Montana suit was a conclusive judgment on the merits. A judgment rendered on an issue of law is conclusive as to the questions involved. *Gould* v. *Evansville & C. R. R. Co.*, 91 U. S. 526; *Bissell* v. *Spring Valley Township*, 124 U. S. 225. It appears in compliance with the Montana law that the judgment against Harris was a final judgment upon the merits. The judgment was not (as appellant contends) a mere non-suit constituting no adjudication. *Herbert* v. *King*, 1 Montana, 475. A judgment on the merits against an ancillary administrator in a suit

brought by him is conclusive as to that cause of action against the domiciliary or any other ancillary administrator.

Appellant did not establish the existence of any debt due from the defendants or any of them. The will was not "defeated" either in form or in substance. The defendants did not "get their shares" within the meaning of the contract before the suit was brought. The conditions not having been fulfilled, the appellant cannot recover.

To the questions propounded by the court, counsel answer:

1. The court has no jurisdiction to ascertain and declare a lien upon property in the possession of the administrator appointed by the Probate Court for the County of Suffolk and State of Massachusetts; it cannot entertain such a suit unless there is a *res* of which it can take jurisdiction. *Robertson* v. *Carson,* 19 Wall. 94; *Goodman* v. *Niblack,* 102 U. S. 556; *Ins. Co.* v. *Bangs,* 103 U. S. 435; *Mellen* v. *Moline Iron Works,* 131 U. S. 352; *Arndt* v. *Griggs,* 134 U. S. 316; *Greeley* v. *Lowe,* 155 U. S. 58; *Dick* v. *Foraker,* 155 U. S. 404; *Compton* v. *Jesup,* 167 U. S. 1; *Roller* v. *Holly,* 176 U. S. 398; *McDaniel* v. *Traylor,* 196 U. S. 415.

There was no *res* within the jurisdiction upon which the decree of the court could be enforced. *Byers* v. *McAuley,* 149 U. S. 608; *Hess* v. *Reynolds,* 113 U. S. 73, and other cases.

Even in a suit *inter partes* founded on personal jurisdiction the Circuit Court would not have jurisdiction to ascertain and declare a lien upon the property in possession of the ancillary administrator appointed in Massachusetts. *Blackstone* v. *Miller,* 188 U. S. 189; *Mager* v. *Grime,* 8 How. 490, 493; *Security Trust Co.* v. *Black River Nat. Bank,* 187 U. S. 211, 227; *Farrell* v. *O'Brien,* 199 U. S. 89; *Tilt* v. *Kelsey,* 207 U. S. 43, 56; *Byers* v. *McAuley,* 149 U. S. 608.

2. The Circuit Court had no jurisdiction to foreclose a lien, if one existed, on property in the Probate Court for administration.

3. The Circuit Court had not jurisdiction to determine the shares of Root and Coram in the property in the possession of

the Probate Court. *Payne* v. *Hook,* 7 Wall. 425; *Hook* v. *Payne,* 14 Wall. 252; *Byers* v. *McAuley,* 149 U. S. 608.

4. Neither on the present bill nor any amendment can an order be entered requiring Leyson, Root or Coram to retain property hereafter coming into their hands to satisfy the complainant's claim. *Cates* v. *Allen,* 149 U. S. 451; *Hollins* v. *Brierfield Coal & Iron Co.,* 150 U. S. 371.

5. The Circuit Court is excluded from any exercise of jurisdiction which disturbs the possession of the property by the Probate Court or the free exercise by the Probate Court of its jurisdiction over the property, and this limitation excludes jurisdiction of the case at bar.

Controversies in which a title is asserted adverse to the title of the deceased do not involve any question as to this limitation of jurisdiction. *Erwin* v. *Lowry,* 7 How. 172; *Williams* v. *Benedict,* 8 How. 107; *Wiswall* v. *Sampson,* 14 How. 52; *Peale* v. *Phipps,* 14 How. 368, 376.

The limitation prevents any exercise of jurisdiction by other courts inconsistent with the possession of property by the Probate Court or with its exercise of exclusive jurisdiction in matters of probate administration. *Suydam* v. *Broadnax,* 14 Pet. 67; *Williams* v. *Benedict,* 8 How. 107; *Union Bank* v. *Jolly,* 18 How. 503; *Green's Admx.* v. *Creighton,* 23 How. 90; *Yonley* v. *Lavender,* 21 Wall. 276; *Case of Broderick's Will,* 21 Wall. 503; *Gaines* v. *Fuentes,* 92 U. S. 10; *Kittredge* v. *Race,* 92 U. S. 116; *Borer* v. *Chapman,* 119 U. S. 587; *Ellis* v. *Davis,* 109 U. S. 485.

Whether the remedy in a given case is by a proceeding *inter partes* or by a probate proceeding depends upon the law of the State. *Ellis* v. *Davis,* 109 U. S. 485; *Farrell* v. *O'Brien,* 199 U. S. 89; *Payne* v. *Hook,* 7 Wall. 425.

Under the law of Massachusetts there can be no proceeding *inter partes* to recover a distributive share until the Probate Court has ordered distribution. *Haskins* v. *Hawkes,* 108 Massachusetts, 379; *Pritchard* v. *Norwood,* 155 Massachusetts, 539; *Cathaway* v. *Bowles,* 136 Massachusetts, 54;

*Fletcher* v. *Fletcher*, 191 Massachusetts, 211. In the case at bar the limitation on the jurisdiction of the Probate Court was absolute.

6. The Probate Court of Suffolk County has not, as ancillary to its possession of the property, final jurisdiction to declare, enforce and foreclose a lien on a share in the fund. *Bennett* v. *Kimball*, 175 Massachusetts, 199; *Green* v. *Gaskill*, 175 Massachusetts, 265; *Lenz* v. *Prescott*, 144 Massachusetts, 505.

MR. JUSTICE McKENNA, after stating the case as above, delivered the opinion of the court.

A question of jurisdiction occurs. It was discussed somewhat in the original briefs of counsel, but questions were submitted to them as appropriate to elicit further discussion.[1] We find it, however, more convenient and more conducive to brevity, in passing on the question of jurisdiction, to be somewhat

---

[1] 1. Has the Circuit Court jurisdiction to ascertain and declare a lien upon property in the possession of the administrator appointed by the Probate Court for the county of Suffolk and State of Massachusetts?

2. Has the Circuit Court jurisdiction to enforce by foreclosure a lien upon property so situated?

3. Has the Circuit Court jurisdiction to determine the shares of Root and Coram in the property so situated?

4. Has the Circuit Court jurisdiction, upon the pending bill either in its present form or as it might be amended, to direct that Leyson, Root, Coram, or either of them, should hold any property, coming into their hands by order of distribution of the Probate Court, upon the trust to satisfy the claim of the complainant?

5. To what extent, if any, is the jurisdiction of the Circuit Court limited or affected by the fact that the property from which payment is sought is in the hands of an administrator appointed by the Probate Court of Suffolk County?

6. Has the Probate Court of Suffolk County, as ancillary to its possession of the property, jurisdiction in equity to ascertain, declare, enforce, and foreclose a lien upon it?

general. The petitioner (and her intestate) were citizens of New York. The defendants in the suit below, nine in number, were citizens of Massachusetts. Coram was a citizen of Massachusetts. Root and Andrew J. Davis, trustee, were citizens of Montana. Leyson was also a citizen of Montana. It is hence contended that, while there was diversity of citizenship when the suit was brought, there was no jurisdiction against Root and Andrew J. Davis, they not being inhabitants of the district. The suit against them, it is further contended, was without jurisdiction also, because it was not brought either in the district of the residence of the plaintiff or the defendant. And this, it was said, was recognized by the bill, which prayed an order for the absent defendants to appear and plead in accordance with § 738, Rev. Stat., now act of March 3, 1875, 18 Stat. 470, 472. That act provides, § 8, for notice to absent defendants in any suit "to enforce any legal or equitable lien or cloud upon the title to real or personal property within the district." And it is urged that the Circuit Judge said that the proceeding could only be sustained under that act.

The objection that Massachusetts was not the district of the residence of either Root or Davis was not made to the bill. The objection to the jurisdiction made by the demurrers was to the jurisdiction of the Circuit Court to interfere with or stay proceedings in a Probate Court of the Commonwealth of Massachusetts. It makes no difference how the parties were served or brought in. Being in, all objections to the bill should have been made. The bill prayed a personal judgment against Root as well as a lien upon his share, and those represented by Coram, in the hands of Leyson as administrator of Davis, deceased, and that Leyson be restrained from paying them and Root and Coram from receiving or carrying them away. And general relief was also prayed. In other words, the whole case arising from Ingersoll's service and the remedies for that service was presented. And to this case the defendants were summoned to answer. They did answer as to the jurisdiction of the court as to subject-matter, as to the relation of the

courts of the United States to the courts of Massachusetts. They did not answer as to the jurisdiction of the court as to parties, as to the rights of the parties to be sued in the district of their residence. The latter objection may be waived, and is waived by not being made. *In re Moore,* 209 U. S. 490. ·

To decide what jurisdiction the Circuit Court exercised we must consider the decree. It found all of the allegations of the bill to be true, and that. there was due and owing to the plaintiff (petitioner here), on the contract executed by Coram and Root the sum of $95,000, with interest, amounting in all to the sum of $138,810.83. It adjudged Root to be personally indebted and liable for that sum and awarded execution against him, and for any balance that should be due if the property upon which the lien was declared, as presently mentioned, should not satisfy such indebtedness; that Coram was personally obligated and liable for the payment of said indebtedness upon the full amount which he had received, or should receive, from the shares of the estate of Andrew J. Davis, deceased, acquired for the five heirs mentioned in said agreement, or either of them; under or pursuant to the decree of the District Court of the State of Montana. It was also found and decreed that there was in the State of Massachusetts, in the hands of John H. Leyson, as administrator of Andrew J. Davis, deceased, $337,862, and 137 bonds of the United States, and 170 bonds of the Butte and Boston Consolidated Mining Company, of which money and bonds and the increase thereof, the said five heirs of Andrew J. Davis, deceased, and their legal representatives and successors in interest, were entitled to receive 515½ eleven-hundredths under and pursuant to the decree of the District Court of the State of Montana; and of which money and bonds and the increase thereof Coram and Root were entitled to have and receive 415½ eleven-hundredths parts on distribution of such money and bonds by the proper court having jurisdiction thereof in the administration and distribution of the estate of Andrew J. Davis, deceased. Upon such 415½ eleven-hun-

dredths parts petitioner was decreed to have a lien "subject to all proper and lawful administration," as a part of the estate of Andrew J. Davis, deceased, "pursuant to the orders and decrees or judgments of the Probate Court of Suffolk County, Massachusetts, now having probate jurisdiction thereof, or any court which may hereafter have probate jurisdiction . . . to administer the same as part of the estate of said Andrew J. Davis, deceased, in the due and lawful course of administration thereof." A lien is decreed upon said money and bonds and foreclosed subject to the terms of the decree wheresoever said money and bonds may be taken or removed, whether within or without the State of Massachusetts, and in the custody of whomsoever the same may come, "subject only to the proper and lawful probate administration . . . pursuant to the orders, judgments or decrees of the Probate Court of Suffolk County, in the State of Massachusetts, now having probate jurisdiction thereof . . . to administer the same as a part of the estate of Andrew J. Davis, deceased, in the due and lawful course of administration thereof." And it was decreed that as soon as the probate administration is finished and distribution is ordered by the Probate Court having jurisdiction, that Leyson, as administrator, or his successor in custody thereof, should set apart and bring into court the said 415½ eleven-hundredths of said money and bonds, to be applied to the satisfaction of the lien of complainant. It was decreed that each and all of the injunctive and restraining terms and commands of the interlocutory injunction order be made perpetual, and Leyson was enjoined and restrained, as administrator, from removing out of Massachusetts 415½ eleven-hundredths parts of the money and bonds in his possession, "unless and until the proper court within the State of Massachusetts, having probate jurisdiction of said money and bonds, by its final order, judgment or decree, directs said John H. Leyson, as such administrator, to remove said 415½ eleven-hundredths of said money and bonds out of the State of Massachusetts."

We have made this epitome of the main provisions of the decree to show how careful the court was to require the observance of its direction expressed in its opinion that the decree should declare that nothing in it was intended to contravene, or should contravene, "any action of any probate tribunal in Massachusetts with reference to distribution, or to any order or judgment remitting to the courts of the domicil."

The decree therefore deals exclusively with the parties. It adjudges what contract they made, the extent of their obligation and how that contract was secured. The remedies awarded are executed through the parties, and through Leyson only as he holds property to be delivered to the parties. No action of the Probate Court of Suffolk County is attempted to be restrained or limited or trenched upon, nor the property in its possession disturbed. And yet it is urged that the suit that sought this purpose and a decree that executes this purpose transcend the jurisdiction of a Circuit Court of the United States.

The proposition has been discussed at length by counsel, many cases cited and arguments advanced based upon the respective functions of courts of equity and probate.

The respondents especially rely upon the pendency of proceedings in the Probate Court of Suffolk County, and as a corollary that the property was in the possession of the Probate Court and under its jurisdiction, and, therefore, not within the jurisdiction of the Circuit Court. Respondents express and illustrate the latter conclusion in various ways. Their fundamental postulate, however, is that the Circuit Court has not power to disturb the possession of the property by the Probate Court or do any act which may interfere with the free exercise of jurisdiction by the Probate Court. This postulate is argued at length and many cases are cited. Besides, a statute of Massachusetts is relied upon which provides that upon the settlement of an estate, and after the payment of all debts for which the same is liable in that Commonwealth, the residue of the personal estate may be distributed and dis-

posed of in the manner provided by the will of a deceased, if he left any, or according to the laws of the State or country of which he was an inhabitant, "*or, in the discretion of the court, it may be transmitted to the executor or administrator, if any, in the State or country where the deceased had his domicil, to be there disposed of according to the laws thereof.*" (Italics ours.)

We think, however, a lengthy discussion is not necessary. The controversy presented by the bill was one between citizens of different States, and there was that ground of jurisdiction in the Circuit Court, being a court of the United States. One object of the bill, among others, was to declare and foreclose a lien upon property within the district, and there was that ground of jurisdiction, and we do not think that jurisdiction thus established and supported was taken away by the mere fact that the settlement of the estate of Davis was pending in the Probate Court of Suffolk County. No interference with that court was sought or decreed, as we have seen. Rights between the parties arising from their transactions and contracts were only adjudged and only decreed to be redressed when the Probate Court should have finished its functions. Indeed it may even be that the Circuit Court was too restrictive in the exercise of its power, for it may be disputed whether it is within the power of a state court to order property upon which there is a lien, sent out of a district and thereby defeat the jurisdiction of a court of the United States to enforce such lien in cases where they have jurisdiction under the act of March 3, 1875. This question, however, does not arise, nor any question depending upon it, and the line of cases of which *Wabash Railroad* v. *Adelbert College,* 208 U. S. 38, is an example does not apply, nor do the cases cited by respondent, but the case falls within the principles announced in *Payne* v. *Hook,* 7 Wall. 425, and *Byers* v. *McAuley,* 149 U. S. 608, and cases there cited.

The power of the court of equity to subject the share of a person under a lien, "and yet in the hands of an executor,"

to the payment of his debts has been decided in Massachusetts. *Ricketson* v. *Merrill*, 148 Massachusetts, 76. The same in principle is *Davis et al.* v. *Newton*, 6 Met. 537, where it was held that the distributive share of an insolvent debtor in the hands of an administrator passed to his assignee, and that the administrator could not withhold it from the assignee.

In *Lenz* v. *Prescott*, 144 Massachusetts, 505, it was decided that the Probate Court does not take cognizance of assignments of their interests, made by legatees or distributees, but deals only with those primarily entitled to the legacies or distributive shares; and many cases were cited. The court therefore sustained a bill in equity to ascertain the validity and construction of an assignment of an interest in an estate. See also *Green* v. *Gaskill*, 175 Massachusetts, 265, where the probate jurisdiction of the Probate Court and its equity jurisdiction in relation to other courts is explained, and it is decided that administrators and executors have a right to have their accounts adjusted and the amounts due to or from them determined in the Probate Court, on its probate side, and in the usual probate proceedings, but when the amount for which they are liable is so determined, may, by a bill in equity, be compelled to pay to those entitled their share of the property of the deceased. And this being the power of the courts of equity of the State, a like power certainly may be exercised by the Federal courts.

It is further objected that there is no property of the respondents in Massachusetts. The argument which is urged to support the objection is difficult to state. It seems to draw a distinction, under the laws of Massachusetts, between the will of Andrew J. Davis and the decree of the Montana court admitting the will to probate. "The Probate Court," respondents say, "might and did accept the decree of the Montana court as proof that the will ought to be allowed. It could not and did not accept the decree as establishing that the property in Massachusetts should be disposed of otherwise than as the will provided." And from a consideration of the laws

of Massachusetts, respondents conclude that (we quote the language of counsel), "No part of the property in Massachusetts can therefore in any sense be said to belong to the defendants in the suit. All of it must by law either be paid over according to the will, or be transmitted to Montana, to be distributed as the court may direct." We cannot refrain from saying that it is hard to believe that respondents would like to be taken at the full sense of their words, and we are quite sure that the Probate Court of Suffolk County will regard not the will as propounded for probate, but the will as qualified by the decree, as determining the rights of the parties. At any rate, it is only upon the shares which that court will distribute that the decree of the Circuit Court will operate.

Again, it is charged that the right of the petitioner's intestate was derived from Root, and as he, it is further contended, could not have sued to establish his right to a share in the funds of the administrator, the latter and he being citizens of Montana, that the petitioner was equally disqualified to establish and recover Root's share of the property. The argument is that she is seeking to enforce a right of Root against the administrator arising on an equitable assignment by Root to her intestate, and she is therefore, it is said, suing to recover as assignee of a chose in action upon which the assignor could not sue, because his citizenship is the same as that of the administrator in Massachusetts. Sec. 629, Rev. Stat. There are several answers to the contention. It is certainly very disputable if an interest in a distributive share of an estate is within the statute. Again, she is suing primarily on the obligation of Root to her intestate to secure which a lien was given on Root's distributive share; and besides, again, she sues as administratrix, and she is a citizen of a different State from Leyson. *Sere* v. *Pitot*, 6 Cranch, 333; *Chappedelaine* v. *Dechenaux*, 4 Cranch, 308; *Bushnell* v. *Kennedy*, 9 Wall. 387; *Coal Company* v. *Blatchford*, 11 Wall. 172; *Rice* v. *Houston*, 13 Wall. 66.

Respondents assert the identity of the action in Montana

with the present suit, and upon that identity they urge that
such action constitutes *res judicata.* Petitioner denies the
identity of the actions, and urges besides that there is no such
privity between the parties as to make the Montana action
*res judicata* of the pending case. In support of the latter con-
tention petitioner urges that an ancillary administrator in one
jurisdiction is not in privity with an ancillary administrator
in another jurisdiction, and that therefore a judgment against
one is not a bar to a suit by the other. And this was the ruling
of the Circuit Court. The Circuit Court of Appeals took the
contrary view, and rested its judgment upon the conclusive
effect of the Montana action.

We shall assume that there is identity of subject-matter
between the Montana action and that at bar, but the question
remains, Was there identity of parties? An extended dis-
cussion of the question is made unnecessary by the case of
*Brown* v. *Fletcher's Estate,* 210 U. S. 82. In that case a suit
in equity against Fletcher, brought in his lifetime, was re-
vived after his death, and a decree obtained. Fletcher resided
in Michigan, where he died leaving a will, which was duly
probated in the Probate Court of Wayne County in that State,
in which the decree of the Massachusetts courts was filed as
evidence of a claim against the estate. Its effect as such was
denied, and the case was brought here by writ of error. Re-
plying to the contention of plaintiff in error, that the Michigan
executor and the administrator with the will annexed of
Fletcher's estate in Massachusetts were in such privity that
the decree was conclusive evidence of it in the proceedings in
Michigan, this court held that the decree was not binding upon
the Michigan executor or the estate in his possession, citing
*Vaughan* v. *Northrup,* 15 Pet. 1; *Aspden* v. *Nixon,* 4 How.
467; *Stacy, Admr.,* v. *Thrasher,* 6 How. 44. The latter case
was quoted from as follows: " 'Where administrations are
granted to different persons in different States, they are so
far deemed independent of each other that a judgment ob-
tained against one will furnish no right of action against the

other, to affect assets received by the latter in virtue of his own administration; for in contemplation of law, there is no privity between him and the other administrator. See Story, Confl. of Laws, § 522; *Brodie* v. *Bickley,* 2 Rawle, 431.' " *McLean* v. *Meek,* 18 How. 16; *Johnson* v. *Powers,* 139 U. S. 156, were also cited, and it was said that the "doctrine was enforced in Massachusetts. *Low* v. *Bartlett,* 8 Allen, 259."

Respondents insist that this doctrine has no application to the Montana judgment, and urge that the latter was a bar of the pending suit (1) because it was a judgment on the merits, and (2) because such a judgment "against an ancillary administrator in the suit brought by him is conclusive as to that cause of action against the domiciliary or any other ancillary administrator." And this is said to follow from the proposition which appellant advances, that "the authorized act of an ancillary administrator as to property of the intestate within his jurisdiction is binding everywhere," and it is hence concluded that a suit brought by an ancillary administrator is subject to the same principle as an act done touching tangible property. That the argument by which this conclusion is supported has strength is established by the fact that the Circuit Court of Appeals yielded to it, and it is said to be sanctioned by *Biddle* v. *Wilkins,* 1 Pet. 686; *Wilkens* v. *Ellett,* 108 U. S. 256; *Talmage* v. *Chapel,* 16 Massachusetts, 71. But as these cases preceded *Brown* v. *Fletcher's Estate,* they must be regarded as consistent with it. Besides, in that case, *Johnson* v. *Powers,* 139 U. S. 156, was cited as establishing, on the authority of *Aspden* v. *Nixon, Stacy* v. *Thrasher, Low* v. *Bartlett,* 8 Allen, 259, the doctrine that a judgment recovered against the administrator of a deceased person in one State is no evidence of debt, in a subsequent suit by the same plaintiff in another State, either against an administrator, whether the same or a different person, appointed there, or against any other person having assets of the deceased. That there is a certain amount of artificiality in the doctrine was pointed out in *Stacy* v. *Thrasher,* and that it leads to the inconvenience

and burdensome result of retrying controversies and repeating litigations. The doctrine, however, was vindicated as a necessary consequence of the different sources from which the different administrators received their powers, and the absence of privity between them, and that the imputations against it were not greater than could be made against other "logical conclusions upon admitted legal principles." It is not necessary, therefore, to review in detail the argument of respondents. Its fundamental concept is that the authorized act of an administrator as to property of the intestate within his jurisdiction is binding everywhere, and it is said that a suit brought by an administrator is subject to the same principle. The generality of the conclusion, however, counsel immediately limit by the concession that it does not include a suit brought against an administrator, whether he successfully or unsuccessfully defends it. In other words, the principle is true only of an action brought by an ancillary administrator to enforce a claim in behalf of the estate and judgment goes against him. But counsel even limit this again, and says it would not be binding "in the sense of creating a personal liability for costs, if costs be awarded, or otherwise, but it is binding in the sense that the cause of action has been effectively disposed of." That is, as counsel explains, merged in the judgment. We do not think that the doctrine announced in *Brown* v. *Fletcher's Estate, supra,* admits of these distinctions, and surely the estoppel of a judgment must be mutual. The argument of appellees contends for the contrary; it makes a judgment against an ancillary administrator binding against other administrators, but not binding for them. We think, therefore, that the Montana judgment is not a bar to the pending suit.

On the merits there are two propositions: (1) Did the complainant establish the existence of a debt due from Coram and Root to Ingersoll? (2) Did she establish the existence of a lien? On neither of these propositions did the Court of Appeals pass; the Circuit Court decided them in favor of complainant.

We need not recite the evidence. The Circuit Court found, and, we think, rightly found, that the agreement sued on was performed. In other words, that the will of Davis was defeated, and that the contestants got their shares through the services of Ingersoll. The form in which the defeat was expressed is unimportant. The will as propounded was defeated. As propounded it cut them off from inheritance. As qualified in probate, by compromise more property was received than would have come to them by inheritance. And the evidence leaves no doubt that it was brought about, to quote the bill, "by the force, effect and stress" of the contest and by the services, which it is admitted Ingersoll rendered, and from the belief that the will as propounded would not receive probate and would only receive probate when so qualified as to recognize the rights of the contestants as heirs of the estate. That it did not do so was its defect and to make it do so was the purpose for which they employed Ingersoll and which his services achieved. There was performance, therefore, of his contract.

The next question is, Does the evidence establish the existence of the lien? An affirmative answer must be given. It is manifest that payment to Ingersoll was dependent upon success, but it is equally manifest that he relied upon more than the personal responsibility of the parties. The so-called five heirs, Elizabeth S. Ladd, Sarah M. Cumming, M. Louise Dunbar, Ellen Cornue, and Henry A. Root entered into an agreement in which it was recited that controversies had arisen in regard to the will, and that Root had rendered services and expended money in behalf thereof, and had undertaken "to procure evidence, counsel and such other needs" as were necessary for opposing the will and obtaining for the others their "respective rights and shares" of the estate, and in consideration thereof there was assigned to Root and one Gideon Wells one-third part of each of their interersts to reimburse Root for the moneys he had expended or should expend or the liabilities which he might incur on account thereof. And it was agreed

that the assignment was to be in full for past or future lia-bilities. Root, on his part, agreed to employ counsel and to do all things necessary to secure the interests of the other parties.

It is alleged in the complaint and admitted by the answer that Coram acquired the remaining interests of Elizabeth Ladd and Mary L. Dunbar and that the interests so acquired were dependent upon the prosecution of the objections to and contests of the validity of the will until the shares of the five heirs should be secured to them by a grant from the proponent of the will or by the decree of the District Court of Montana. This being the situation, Ingersoll wrote to Root as follows:

"May 1st, 1891.

"My dear Root. Do not know whether I can get the money, but feel sure I can raise $25,000—have already secured $13,000—

"Now, there is another thing: I suppose it is best for you and I to have a specific and definite understanding in regard to my fee. Of course, if you should lose the case you could not pay. We can raise money enough to pay expenses and of course I shall want expenses—but the real question is as to what I am to have in case of success and how that is to be secured— i. e. what papers are necessary, etc.

"Let me hear from you.

"Yours,

"R. G. INGERSOLL."

To which Coram and Root replied as follows:

"Butte City, Mont., August 17, 1891.

"R. G. Ingersoll, Esq., Butte City, Montana.

"Sir: We agree that for your services in the contest of Maria Cummings and Henry A. Root against the probate of the alleged will of A. J. Davis, deceased, rendered and to be rendered, that your fee, in case the will is defeated and our clients get their shares, shall be one hundred (100,000) thousand dollars, and that your expenses and disbursements shall be paid in any event.

"There is to be no personal obligation against J. A. Coram, in the event that the interests represented by Henry A. Root are unsuccessful, and in no event is the said J. A. Coram obligated except to pay such fee out of the funds secured from the estate of A. J. Davis, deceased, by Maria Cummings, Lizzie S. Ladd, M. Louise Dunbar and Mrs. Ellen S. Cornue and Henry A. Root.

"HENRY A. ROOT,

"J. A. CORAM." 

It is evident, therefore, that Ingersoll asked for security in a definite and written form. We do not think it can be said that he sought only a promise to pay. That followed from his employment, and besides Coram stipulated against personal liability, but did obligate himself to pay "out of the funds secured from the estate." And this is the test of the agreement. It is the exception that establishes that as to Root there was a personal and property obligation; as to Coram, a property obligation. It is confirmed by excerpts from the letters of Root set out in the complaint and introduced in evidence. In those letters he expresses a desire "That Mrs. Ingersoll should realize out of the Davis estate as much as possible," and would "bend every effort" to that end. And, explaining the agreement, he said that Ingersoll "was to receive $100,000 from moneys collected from the Davis estate for his services," and assured Mrs. Ingersoll that he would do everything in his power to see that she received "as much from that fund," (referring to the estate in Boston).

The sufficiency of the agreement of August 17, 1891, to create a lien seems not to have been seriously questioned in the Circuit Court upon the argument of the demurrer. However the court said that "Upon all settled rules with reference to the construction of such instruments we cannot doubt that this one of August 17, 1891, created a lien on the funds therein referred to in behalf of Mr. Ingersoll." On the final hearing the effect of the instrument was contested, and the court adhered to its ruling, saying, "Whether or not the particular

agreement creates a lien is a matter of construction. In this case the fact that there was no primary personal responsibility on J. A. Coram specially serves to stamp the agreement in issue as declaring a purpose to create a lien. Therefore, on the whole, we hold that, on this final hearing on bill, answer and proofs, the bill must be sustained.". The conclusion of the court is sustained by authority. In *Wylie* v. *Coxe*, 15 How. 415, a contract was made with an attorney for the prosecution of a claim against Mexico to pay him a contingent fee of five per cent out of the fund awarded. It was held that the agreement constituted a lien upon the fund. In *In re Paschal*, 10 Wall. 483, in the letter retaining Paschal it was said that his compensation would depend upon the action of a future legislature, "unless a recovery is had in the suit, in which event I shall feel authorized to let you retain it out of the amount received." It was held that in accordance with the prevailing rule in this country Paschal had a lien on the fund in his hands for disbursement and professional fees. The case was cited in *McPherson* v. *Cox*, 96 U. S. 404, 417, and the doctrine repeated. See also *Central Railroad* v. *Pettus*, 113 U. S. 116; *Louisville &c. Railroad Company* v. *Wilson*, 138 U. S. 501, 507. In *Walker* v. *Brown*, 165 U. S. 654, it was held that every express executory agreement in writing, whereby the contracting party sufficiently indicates an intention to make some particular property, real or personal, or fund, therein described or identified, a security for a debt or other obligations, creates an equitable lien on the property so indicated. This was an application of the doctrine of *Fourth Street Bank* v. *Yardley*, 165 U. S. 634, and *Ketchum* v. *St. Louis*, 101 U. S. 306. These cases are not opposed by *Trist* v. *Child*, 21 Wall. 441, and *Wright* v. *Ellison*, 1 Wall. 16. In the latter case it is said that it is indispensable to the lien thus created that there should be a distinct appropriation of the fund by the debtor, and an agreement that the debtor should be paid out of it. These conditions are satisfied in the case at bar.

The other contentions of respondents assert a defect of par-

ties and error in the decree as to the amount of interest adjudged to Root and Coram in the property. In the first contention we do not concur.

The second contention is justified. We do not think, however, that it is necessary to enter into all of its details, with some of which, we may say, we do not agree. We think that the Circuit Court rightly, as we have already pointed out, adjudged that the five heirs were entitled, by virtue of the final decree in Montana, to $515\frac{1}{2}$ eleven-hundredths of the estate in Massachusetts, and in adopting, as we think it did, in making division among them according to intestacy, that is, in proportion to the shares they would have taken in case Davis had died intestate. Those shares the bill alleged and the answers admitted would have been as follows: Sarah M. Cummings and Elizabeth S. Ladd, one-eleventh each; Henry A. Root, Ellen S. Cornue and Mary Louise Dunbar, one twenty-second each—in all, 350 eleven-hundredths of the estate. But there was error in adjudging that the interest remaining in Sarah Maria Cummings and Ellen S. Cornue, after the assignment of one-third of their interest to Root, to be respectively sixty-two and two-thirds eleven-hundredths and thirty-three and one-third eleven-hundredths. The bill shows that they were entitled respectively to one hundred eleven-hundredths and fifty eleven-hundredths of the amount they as two of the five heirs would have been entitled to if Davis had died intestate, that is, those shares of three hundred and fifty eleven-hundredths. But the amount was increased by the decree in Montana to $515\frac{1}{2}$ eleven-hundredths and their shares thereof necessarily increased. In other words, as they were entitled respectively to $\frac{2}{7}$ and $\frac{1}{7}$ of the first amount, they are entitled respectively to $\frac{2}{7}$ and $\frac{1}{7}$ of the second amount, to wit, $147\frac{4}{14}$ eleven-hundredths and $73\frac{9}{14}$ eleven-hundredths, one-third of which amounts was assigned to Root. There were left in them respectively, therefore, $98\frac{4}{21}$ eleven-hundredths and $49\frac{2}{21}$ eleven-hundredths. To Root, as we have seen, they assigned $\frac{1}{3}$ of their shares, and there was also assigned to him $\frac{1}{3}$ of the shares

of Elizabeth S. Ladd and Mary Louise Dunbar, making with the $\frac{1}{7}$ to which he is entitled in his own right $220\frac{13}{14}$ eleven-hundreths. Coram is entitled as assignee to the other two-thirds of the shares of Ladd and Dunbar, to wit, $147\frac{4}{14}$ eleven-hundredths, making the total in him and Root of $368\frac{3}{14}$ eleven-hundredths instead of $415\frac{1}{2}$ eleven-hundredths, as stated in the decree. The decree must be modified accordingly.

The decree of the Circuit Court of Appeals is reversed and that of the Circuit Court is modified as above indicated, and, as modified,

*Affirmed.*

MR. JUSTICE HOLMES and MR. JUSTICE MOODY dissent.