HOUSTON NAT. EXCH. BANK OF HOUSTON v. GREGG COUNTY et al. (No. 1922.)

(Court of Civil Appeals of Texas. Texarkana. April 3, 1918. Rehearing Denied April 11, 1918.)

1. BANKS AND BANKING &#8258;109(3) — AUTHORITY OF CASHIER—DELEGATION BY DIRECTORS—STATUTE.

Under Rev. St. 1911, art. 530, providing that the officer or employé of a state bank shall have no power to indorse, sell, or hypothecate any obligation received by the bank for money loaned, unless such power is given by the board of directors at a regular meeting at which a written record of the proceedings is made upon the. minutes, and that otherwise such acts of any officer or employé shall be void, the cashier of a bank, authorized thereto by a duly entered resolution, had authority to contract to pledge the bank's bills receivable for the payment of its debt.

2. MORTGAGES &#8258;28—EQUITABLE LIEN.

An agreement to mortgage designated property, when carried so far that nothing remains undone except the formal execution of the mortgage, may, as between the parties, be treated as creating an equitable lien.

3. PLEDGES &#8258;14—BILLS RECEIVABLE—EXECUTORY AGREEMENT.

If, after a conversation between the officers of a debtor and a creditor bank regarding the payment of drafts and the giving of a note and security, all the terms were settled, and nothing remained except performance, the contract was within the class which may be enforced as an executory agreement.

4. PLEDGES &#8258;14 — BILLS RECEIVABLE — MORTGAGE AGREEMENT.

An agreement between the officers of a debtor and a creditor bank, whereby the cashier of the debtor bank agreed to send the note of his bank for a certain sum, to be secured by bills receivable then held by his bank equal to $30,000, which were to be first-class commercial paper, and, in consideration for the note and the pledge of collateral the creditor bank was to and did pay the drafts which had been presented, and performance alone was required to complete the transaction, the creditor bank was entitled to an equitable lien, though the note was never executed and the bills receivable were not sent to it.

Appeal from District Court, Gregg County; Daniel Walker, Judge.

Petition in the matter of the insolvency of the People's State Bank by the Houston National Exchange Bank of Houston for allowance of claim, and a preference on the assets of the bank. Gregg County and others protested. Judgment for plaintiff for the amount of its claim, but denying a priority, and it appeals. Reversed, and judgment rendered, allowing plaintiff's demand as a preferred claim.

Edwin Lacy, of Longview, and Otto Taub, of Houston, for appellant. F. J. McCord, J. H. McHaney, E. M. Bramlette, and Young & Stinchcomb, all of Longview, for appellees.

HODGES, J. In August, 1916, the state commissioner of insurance and banking closed the doors and took charge of the affairs of the People's State Bank of Longview, because of its insolvent condition. In March, 1917, he filed in the district court of Gregg county a petition, showing the assets of the defunct bank and the list of claims presented by its creditors other than depositors. Among the claims presented as having been allowed by him was that of the appellant, the Houston National Exchange Bank, for the sum of $18,939.78. This claim, it appears, was based upon overdrafts drawn by the Longview bank upon the Houston bank. In his petition the commissioner asks that a date be fixed for a hearing and that the creditors of the insolvent bank be permitted to contest the allowance and rejection of claims theretofore made by him. In April following the Houston National Exchange Bank filed its petition with the district court of Gregg county, alleging

that its claim was entitled to a preference, upon the ground that it was secured by an equitable mortgage upon certain commercial paper held by the insolvent bank at the time it ceased to do business. This claim of priority was contested by Gregg county, and upon hearing the court approved the allowance of the claim, but refused the preference and lien asserted by the appellant. From that order this appeal is prosecuted.

The following are, in substance, the material facts as set out in the findings filed by the trial court: In January, 1916, the directors of the People's State Bank of Longview at a regular meeting passed and had spread upon their minutes the following resolution:

"Whereas, it is desirable that the officers of this bank should from time to time be able to borrow sums of money on its behalf: Be it resolved:

"1. That the president and cashier of this bank are and each of them is hereby authorized to borrow from time to time on behalf of this bank from the Houston National Exchange Bank of Houston, Texas, such sum or sums of money for such times and upon such terms as may to them or any of them seem advisable, and to execute notes or agreements accordingly in the name of the bank for the payment of any sum so borrowed.

"2. That each of the said officers is hereby authorized to pledge any of the bonds, stocks, bills receivable or other securities or property of the bank for the purpose of securing any money so borrowed, upon such terms as may to the officers or officer pledging the same seem advisable.

"3. That each of the said officers is hereby authorized to rediscount with said bank any of the bills receivable held by this bank, upon such terms as he may deem advisable.

"4. That the foregoing powers shall continue until express notice of their revocation has been duly given to said bank from whom this bank shall borrow money in the manner above described."

The appellant bank never at any time received any notice of the revocation of the powers conferred by the terms of that resolution. During the month of January, 1916, the People's State Bank borrowed from the appellant the sum of $40,000, giving its note for that sum and pledging as security for the payment of the note certain of its bills receivable. About the 7th of August, 1916, the People's State Bank became further indebted to the appellant bank through overdrafts made upon the latter, and continued to be so indebted until its doors were closed; the amount of such indebtedness fluctuating from day to day by reason of additional drafts made by the People's State Bank and remittances being sent to the appellant. On the 12th of August, 1916, which was Saturday, the amount of the indebtedness of the People's State Bank to the Houston National Exchange Bank at the close of business was $11,564.17. During that week the matter of giving the appellant security for the account of the Longview bank was discussed between the cashiers of those two institutions, but no definite agreement was made at that time to give the security. On Monday, August 14, 1916, other drafts

of the People's State Bank upon the Houston National Exchange Bank were presented to the latter for payment. Before paying them, however, the vice president and cashier of the Houston bank called the cashier of the People's State Bank by telephone and notified him that such additional drafts could not be paid unless security should be given for the account then due the Houston bank. The cashier agreed to send to the appellant bank the note of the People's State Bank for $20,-000, such note to be secured by bills receivable for money loaned by the People's State Bank equal to the sum of $30,000; such bills receivable to be first-class commercial paper. The note for $20,000 was never executed or sent, and none of the bills receivable of the Longview bank was sent as agreed upon. None was ever designated or set apart for that purpose, and there was never any agreement as to what paper should be given to the appellant as security for the debt referred to.

At the time of making the advances referred to above the Houston bank acted in good faith, and had no notice that the People's State Bank was insolvent or in a failing condition. The latter bank received the benefits of the advances made by the Houston bank in the settlement of its business affairs. After August 14th, and after the commissioner of insurance and banking had taken charge of the assets of the Longview bank, there was realized from the proceeds of notes belonging to the People's State Bank the sum of approximately $87,536; the sum of $14,000 having been collected prior to the time the commissioner took charge of the bank on August 18, 1916, and the remainder having been collected after that time. At the date of the trial there was in the hands of the commissioner bills receivable belonging to the People's State Bank amounting to about $16,137, 50 per cent. of which was collectible and probably will be collected by the commissioner in the further administration of the bank's affairs. Upon these facts the trial court approved the allowance of the appellant's claim, but refused to find it was secured by a lien.

[1] There are two grounds urged in support of the judgment rendered. The first is that the evidence fails to show a transaction embracing the essential elements of a complete agreement to mortgage specific property; that no particular security was agreed upon or designated by the contracting parties. The second ground urged is that the officers of the People's State Bank had no legal authority to pledge its bills receivable as security for the debt contracted. While the trial judge expressly based his conclusions of law upon the first ground, he intimated a grave doubt as to the sufficiency of the resolution relied on, to confer authority upon the officers of the People's State Bank to pledge its commercial paper in the manner attempted. Article 530 of the Revised Civil Statutes contains the following:

"The officer or employé [of a state bank] shall have no power to indorse, sell, pledge, or hypothecate any note, bond or other obligation received by such corporation for money loaned, until such power and authority shall have been given such officer or employé by the board of directors in a regular meeting of the board, a written record of which proceedings shall have first been made upon the minutes of the corporation; and all acts of indorsing, selling, pledging or hypothecating, done by said cashier, or other officer or employé of any such bank or trust company, without the authority of the board of directors given as here provided, shall be null and void."

It is insisted that it was the purpose of this statute to confer upon the directors the exclusive authority to determine whether or not the bank's commercial paper should be mortgaged, and that this authority cannot be delegated to any other bank official by a general blanket resolution passed by the directors, but must be given with reference to each particular transaction in which any of the bank's property is pledged for the payment of its debts. This argument is based, not upon any particular provision of the banking law, but upon a general construction as indicating a purpose to confine this character of authority to the board of directors. Such a construction would practically nullify the specific provisions of the statute which empowered the directors to delegate this authority to other officials. If the directors must themselves inquire into every transaction, and in every instance pass judgment upon the expediency of pledging collateral security for loans made to the bank, there would, in effect, be no transfer of that power. To delegate power means to pass it on to another, who may thereafter exercise it in a manner not inconsistent with the grant.

Borrowing money and pledging collateral security therefor is a part of the legitimate business of a banking institution. It has been generally held by the courts that, in the absence of some restrictions imposed by law or by the board of directors, the power to exercise that function belongs to the cashier or the officer who has the general management of the bank's affairs. Thompson on Corporations, §§ 4748, 5697, 6131, and cases cited in notes. The affairs of the bank may often be in such condition as to make the procuring of a loan not only proper, but urgent, and at the same time impossible without pledging collateral security. Such operations would be seriously handicapped if in each instance the board of directors must be assembled and special permission secured before the managing officers of the bank could arrange for the desired loan. Evidently one purpose of our statute was to abolish the common-law rule regarding the implied powers of bank cashiers and managing officers, and to enable the directors to withhold such authority, without the necessity of giving notice to every one who lends money to the bank upon such security. The formality and conditions which the stat-

ute prescribes for conferring this power upon subordinate officials of a bank indicate that the delegation is to be substantial, and to continue for some appreciable length of time. The statute apparently not only contemplates that the bank officials may perform the ministerial acts necessary to complete such business transactions, but, when authorized, may exercise a portion, at least, of the discretion reposed in the board of directors. Presumably this delegated power will continue till expressly or impliedly revoked. If in enacting the banking law the Legislature intended to confine to the board of directors the power of mortgaging the bank's bills receivable taken for money loaned, that purpose could have been easily and effectually accomplished by simply forbidding the transfer of that authority to any other bank official. It is not likely that any such purpose existed when language is used which expresses the opposite intent. The fact that such authority has heretofore been considered among the implied powers of cashiers and general managers of banks shows that its exercise by them is not so unusual and extraordinary as to call for any extreme caution in sanctioning its express commitment by the directors.

The terms of the resolution relied on in this case are broad enough to grant the power claimed, and specific enough to cover the transaction involved in this litigation. There appears to be no good reason why the directors of the bank, having confidence in their subordinate officials, should not be permitted to intrust them with authority to do for the institution that which its condition and surroundings made proper and expedient. If the directors may transfer their right of personal supervision over one of these transactions, it would be illogical to say that they could not make a transfer which would cover more than one. When the directors, as in this instance, expressly stipulate that the delegated power is to continue till revoked, the failure to revoke should be construed as tantamount to the continued acquiescence in the transfer previously made. It will be observed that the resolution in this case does not provide that the bank's officials shall have power to borrow money generally and pledge commercial paper as security, but limits them to loans from the appellant bank. We are therefore of the opinion that the cashier of the Longview bank had authority under that resolution to contract for pledging that bank's bills receivable for the payment of the debt due the appellant.

[2-4] The next question is: Were the negotiations between the officers of the two banks sufficient to constitute a binding agreement to mortgage the bills receivable of the Longview bank? That an agreement to mortgage designated property, when carried so far that nothing remains undone except the formal execution of the mortgage, may, as

between the parties, be treated as creating an equitable lien, is too well settled to require discussion. As said by Mr. Pomeroy:

"The intent to give a security being clear, equity will treat the instrument as an executory agreement for such security." 3 Pomeroy on Equity Jurisprudence, § 1237.

But the contention here made, and which appears to have been sustained by the trial court, is that there was not a sufficient designation or segregation of the property to be mortgaged as security for the loan, and for that reason the agreement was incomplete and is unenforceable. If, after the conversation between the officials of the two banks regarding the payment of the drafts and the giving of the note and security, anything remained to be agreed upon by them, there would be some ground for saying the contract was incomplete; but if all the terms and conditions had been settled, and nothing remained except performance by the respective parties, then the contract falls within the class which may be enforced as an executory agreement. The evidence shows that the cashier of the Longview bank agreed to send the note of his bank for a specified sum, to be secured by bills receivable then held by this bank equal to $30,000, these to be first-class commercial paper. As a consideration for the execution of that note and the pledging of that collateral the appellant was to pay the drafts which had been presented. The evidence shows that, relying upon the strength of that agreement, the drafts were paid. At the conclusion of the conversation between the two bank officials the terms were fully agreed upon. The appellant was to pay the drafts, and the other bank was to transmit a note and a specified class of security. There remained, then, nothing to be agreed upon; performance alone was required to complete the transaction. It is true no particular notes or bills were specified, but that was deemed by the parties immaterial. All the appellant asked for was that the security be bills receivable consisting of first-class commercial paper aggregating $30,000 in value. Under those terms the appellant could not have demanded, and the cashier of the Longview bank was not required to select for that purpose, any particular notes or bills. He had the right to segregate and transmit the required amount of designated commercial paper then held by his bank. The appellant was interested in the value of the security it was to get, and not in the identity of the notes or bills to be pledged.

If the pledge in this instance was incomplete, it was because the cashier at Longview failed to perform his part of the agreement. To hold that his bank was not bound is to permit a party to a contract to take advantage of his own wrong and defeat his obligation by his own default. After that agreement it was his contractual duty to forthwith select from the commercial paper held by his bank $30,000 worth of first-class bills receivable and to transmit them, together with the bank's note for $20,000, to the appellant. The failure to do that was a breach of the contract, not the omission of any element essential to its completeness. It would be inequitable to permit the Longview bank, after having secured the benefit of the agreement, to escape liability through its own dereliction. The fact that its affairs are now in the hands of the state's commissioner of banking and insurance does not make the situation different from what it would have been, had it remained in a solvent condition. The contestants, who are now resisting the lien claimed by the appellant, are unsecured creditors, and have acquired no rights which entitle them to protection for lack of notice of the dealings between the appellant and the Longview bank. We therefore conclude that the appellant was entitled to an equitable lien as claimed by it, and that the court erred in not so holding. The record shows that nearly all of the bank's paper was collectible and had been collected prior to the judgment rendered in this case. It is also undisputed that the Longview Bank, at the time this contract was made, had on hand first-class commercial paper or bills receivable more than sufficient to comply with its agreement.

The judgment of the district court will therefore be reversed, and judgment here rendered allowing the appellant's demand as a preferred claim, to be paid as such from the assets of the People's State Bank now in the hands of the commissioner of banking and insurance, and that the appellees pay all costs of this appeal.