CHAPMAN, Commissioner of Insurance and Banking, v. JOHNSON et al. (No. 2894.)

(Court of Civil Appeals of Texas. Texarkana. March 27, 1924. Rehearing Denied April 10, 1924.)

1. Banks and banking ⬅️109(1)—Pledge of securities for loan by another bank held not void.

Pledge of bank's bills receivable as security for loan from another bank, pursuant to resolution of board of directors, *held* not void, under Rev. St. art. 530, though subsequent resolution authorized pledge of such securities to War Finance Corporation for loan.

2. Banks and banking ⬅️96—Pledge held not void for absence of stipulation that banking commissioner should have 30 days to redeem.

Contract to pledge bills receivable to another bank for loan *held* not void for absence of stipulation, required by Rev. St. art. 570, that banking commissioner should have 30 days of grace after date of possession, before actual foreclosure of pledge, to redeem securities, where commissioner took over pledgor bank within 30 days from date of 30-day note secured by such pledge.

3. Appeal and error ⬅️1010(1)—Finding that bank taken over by commissioner not in failing circumstances at time of pledge of securities held binding on appeal.

Court's finding, supported by evidence, in action against banking commissioner to recover bills receivable pledged to another bank as security for loan, that pledgor bank was not in

failing circumstances at time of pledge, so as to avoid it under Rev. St. art. 554, *held* binding on appeal, especially as commissioner's decision as to bank's insolvency, when he took it over, was not conclusive under article 473, as it then read.

**4. Banks and banking ⬥⟿55(4)—Act imposing personal liability on officers assenting to pledge of securities for loan held inapplicable.**

Rev. St. art. 554, imposing personal liability on bank officers assenting to pledge of securities for loan, *held* inapplicable in action against banking commissioner taking over bank to recover bills receivable, pledged to another bank, in absence of separate question as to personal liability of officers.

**5. Pledges ⬥⟿12—Delivery of bills receivable sought to be pledged for loan to bank held sufficient to constitute valid pledge.**

Delivery of bank's bills receivable to another bank for selection of securities to be held as pledge for loan, pursuant to contract fixing no time for selection, *held* valid pledge, enforceable by pledgee or assignee against banking commissioner in charge of pledgor bank, though pledgee returned them to pledgor, temporarily, before such selection.

**6. Banks and banking ⬥⟿63½—Lien of pledgee bank on pledged securities in possession of pledgor bank, when closed, held valid against banking commissioner.**

Equitable lien of pledgee bank and its assignee on securities redelivered, for temporary purpose, to pledgor bank taken over by banking commissioner while in possession thereof, *held* valid against commissioner who holds property as receiver, subject to same equities as bank, though pledgee had not selected securities to be held by it as provided by contract, Rev. St. arts. 5655, 487, being inapplicable.

**7. Pledges ⬥⟿12—Pledge of bank's bills receivable for loan held not ineffective as to renewals, though originals not surrendered.**

In absence of fraudulent intent, pledge of bank's bills receivable as security for loan from another bank would not be ineffective as to renewals, originals of which had not been surrendered to makers.

Error from District Court, Walker County; Carl T. Harper, Judge.

Suit by B. F. Johnson, trustee for himself and others, against J. L. Chapman, Commissioner of Insurance and Banking, and another. Judgment for plaintiffs, and named defendant brings error. Affirmed.

On January 6, 1922, the state Commissioner of Insurance and Banking closed the doors and took charge of the affairs of the Guaranty State Bank of Dodge. He appointed a liquidating agent, who began collection of the assets and bills receivable of the bank. The defendant in error, B. F. Johnson, as trustee for himself and several others, filed a petition in the district court, with the commissioner and the liquidating agent as defendants, seeking to recover Class A bills receivable of the Guaranty State Bank of Dodge, to the value of $4,500, or $3,000 in money, alleging that they had an equitable lien entitling them to possession, under an express agreement of pledge by the Guaranty State Bank of Dodge to the Houston National Exchange Bank, their assignor of December 16, 1921, as collateral security of a note for $3,000.

After hearing the evidence, the court, in a trial before him without a jury, rendered judgment for the plaintiffs in the sum of $2,798.75, with interest, payable as a preference claim out of the assets of the Guaranty State Bank of Dodge.

It appears from the evidence that on January 21, 1921, the board of directors of the Guaranty State Bank of Dodge duly passed, and entered upon the minutes, the following:

"First, that the president, vice president, and cashier of this bank, and each of them, is hereby authorized to borrow, from time to time, on behalf of this bank, from the Houston National Exchange Bank of Houston, such sums of money, for such times, and upon such terms as may to them, or any of them, seem advisable, and to execute notes or agreements, accordingly, in the name of the bank for the payment of any sums so borrowed.

"Second, that each of the said officers is hereby authorized to pledge any of the bonds, stocks, bills receivable, or other securities or property of the bank, for the purpose of securing any moneys so borrowed, upon such terms as may to the officers pledging the same seem advisable.

"Third, that each of the said officers is hereby authorized to rediscount with the said Houston National Exchange Bank of Houston any of the bills receivable held by this bank, upon such terms as he may deem advisable.

"Fourth, that the foregoing powers shall continue until express notice of their revocation has been duly given to the said Houston National Exchange Bank of Houston, Texas."

There was never a revocation of the powers conferred by the terms of that resolution. The Houston National Exchange Bank, under this resolution, made several loans to the Guaranty State Bank of Dodge, which were paid. On December 12, 1921, the Houston National Exchange Bank agreed to lend the Guaranty State Bank of Dodge $3,000, for 30 days, on its note secured by the deposit and pledge of its bills receivable to the value of $4,500. There never was any agreement as to what particular bills receivable should be given as security for the loan. The agreement was that the Houston bank could select such bills receivable out of the collection on hand, to the extent of the value of $4,500, as would be satisfactory to such bank. Accordingly, on December 16, 1921, the Guaranty State Bank of Dodge, acting through its president and cashier, executed and delivered its note to the Houston National Exchange Bank for $3,000, *payable 30 days after date.* At the time of delivery of the note, bills re-

ceivable, greatly in excess of $4,500 were actually delivered by the officers of the Guaranty State Bank of Dodge to the Houston National Exchange Bank for the purpose of enabling the Houston National Exchange Bank to make selection of such of them, to the value of $4,500, as were satisfactory, and to hold same as collateral security for the $3,000 loan. The Houston National Exchange Bank then placed on its books, to the credit of the Guaranty State Bank of Dodge, $3,000, and the latter bank got the benefit of that amount of money. It further appears, that, just previous to the time of its application for the above loan, the Guaranty State Bank of Dodge had been negotiating with the War Finance Corporation for a loan of $10,000, and the War Finance Corporation had agreed to make the loan, "provided the securities of the Guaranty State Bank of Dodge were satisfactory." The Houston National Exchange Bank knew of the pending negotiations, and was to make its loan for 30 days, "until the money from the War Finance Corporation could be secured." Subsequent to the negotiations and agreement above stated, and on December 12, 1921, the following resolution was passed, as material to set out, viz.:

"At a meeting of the directors of the Guaranty State Bank of Dodge, held in the office of said bank on the 12th day of December, A. D. 1921, at ten o'clock a. m., the following members being present and voting, to wit: [Naming them.]

"Thereupon coming on the matter of borrowing some money from the War Finance Corporation with which to retire the indebtedness to the Houston National Exchange Bank, and with which to operate said bank on, the following resolution was unanimously adopted, to wit:

"Resolved that, whereas the Guaranty State Bank of Dodge has heretofore made advances for agricultural purposes, within the meaning of section 24 of the War Finance Corporation Act, and under authority of said act desires to apply to the War Finance Corporation for advance of a sum of money not to exceed ten thousand dollars, to be repaid on or before November 10, 1922, and to bear interest at such rate as may be prescribed by the board of directors of the War Finance Corporation.

"Now, therefore, be it resolved, that W. L. Hill, president, and J. A. Lewis, cashier, of this corporation, or either of them, be, and they are hereby, authorized and empowered for and in the name of, and on behalf of, this corporation to execute and deliver to the, said War Finance Corporation the following papers and documents, to wit:

"(1) Application or applications for an advance or advances in an aggregate amount not to exceed ten thousand dollars at any one time, outstanding, to be repaid upon such dates, in such amounts, and to bear interest at such rate or rates as may be prescribed by the board of directors of the War Finance Corporation, and to be made on form prescribed or approved by the War Finance Corporation, which form has been submitted to this board.

"(2) If any such application receives the favorable consideration of the War Finance Corporation, said officers, or either of them, are authorized to execute and deliver to the said War Finance Corporation the promissory notes or other direct obligations of this corporation in form prescribed or approved by the War Finance Corporation, said notes or other direct obligations to be for the whole or such part of the sum applied for as may, from time to time, be advanced by said War Finance Corporation, to mature on or before the date therein specified, to bear such rate of interest as said corporation may require, and to contain such other conditions as may be imposed by the said War Finance Corporation. Any such advance, in the discretion of said officers, may be accepted in installments, and may be evidenced by one or more notes or other obligations, maturing as directed by the War Finance Corporation, but on or before the date or dates specified.

"Be it further resolved, that in order to secure the payment of any such notes or other obligations of this corporation evidencing advances made to it by the said War Finance Corporation, and to guarantee the faithful performance of any contract entered into with the said War Finance Corporation, the said officers of this corporation be, and each of them is hereby, authorized and empowered to pledge and hypothecate with the said War Finance Corporation any securities belonging to this corporation; and such officers and each of them are further authorized and empowered to do any and all acts, and to execute any and all instruments under the corporate seal of this corporation, or otherwise, as may be necessary or desirable to meet the terms, conditions, and requirements of the War Finance Corporation or its representatives."

After the delivery of the bills receivable into the possession of the Houston National Exchange Bank, and pending the time it was to make examination of them, and before selecting bills to the value of $4,500, the president of the Guaranty State Bank of Dodge received notice from the War Finance Corporation that it "was ready to close up the loan, upon inspection of the securities, and being satisfied therewith." Thereupon the president of the Guaranty State Bank of Dodge notified the Houston National Exchange Bank of the intention of the War Finance Corporation, and requested that all the bills receivable be sent to him for forwarding to the War Finance Corporation for inspection. The Houston National Exchange Bank then agreed with the president of the Guaranty State Bank of Dodge to deliver to him all the bills receivable, upon the condition, and with the understanding, that, if the loan was made by the War Finance Corporation, the $3,000 was to be repaid at once out of such loan; and if such loan was not made by it, then the bills receivable were to be immediately returned to the Houston National Exchange Bank in order for said bank to examine and make selection of its securities therefrom, aggregating in value $4,500. The president of the Guaranty State Bank of Dodge received the bills receivable under the agreement made, and, pending in-

structions from the War Finance Corporation as to the date convenient to bring them for inspection, placed them in the vault of the Dodge bank for safe-keeping. The bills receivable were in the bank vault at the time the doors of the bank were closed by the commissioner, and he took charge of them, and the Houston National Exchange Bank was not allowed to examine the bills receivable, nor granted the privilege of selecting its securities. The War Finance Corporation had not notified the president of the Guaranty State Bank of Dodge as to the date to send the bills receivable for inspection, at the time the commissioner took charge of the bank. The liquidating agent has, it is admitted, collected out of the bills receivable sufficient money to pay the amount of the loan of the Houston bank. Some of the bills receivable, it appears from the evidence, are not collectible, though effort was made to collect them.

There is evidence to support the finding of the trial court, as involved in the judgment, that the Guaranty State Bank of Dodge was a going concern, and was not in a failing condition at the time the agreement was made to pledge the securities. The Houston National Exchange Bank had no knowledge of any insolvency, if existing, of the Guarty State Bank of Dodge prior to January 6, 1921. The Dodge bank had a small balance with the Houston bank, which, deducted from the $3,000 loan, left a balance due the Houston bank of $2,798.75.

It further appears that the defendants in error, B. F. Johnson and three others, on December 12, 1921, pending negotiations for the $3,000 loan, signed an accommodation note for $6,000, and on December 16, 1921, placed it as collateral security for the $3,000 loan of the Houston National Exchange Bank, together with a written guaranty of the payment of the $3,000 note. This $6,000 note was the personal undertaking of the signers, and was not signed by the Dodge bank. It was only supplemental security, and so intended, for the $3,000 note. B. F. Johnson and the others were directors of the Guaranty State Bank of Dodge. After the Dodge bank was closed, and before the maturity of the note for $3,000, B. F. Johnson, as trustee for himself and three others, paid the $3,000, and the Houston National Exchange Bank, in consideration of such sum, transferred the note, and assigned to him the right to demand and receive the securities promised by the Guaranty State Bank of Dodge, to secure the loan. B. F. Johnson presented a timely claim to the Commissioner of Insurance and Banking for the securities, who rejected the claim, and this suit followed.

Wm. McMurrey, of Cold Springs, for plaintiff in error.

Dean & Humphrey, of Huntsville, for defendants in error.

LEVY, J. (after stating the facts as above). By pertinent assignments of error and clear propositions, the plaintiff in error presents, in effect, the three points in view: (1) That the agreement between the Houston National Exchange Bank and the Guaranty State Bank of Dodge of loan and pledge of bills receivable to secure it was legally void and ineffective; (2) that there was no such delivery and retention of possession of the securities in question as to legally constitute it a valid pledge; (3) that the Houston National Exchange Bank or its assignees were not entitled to a preference upon the bills receivable, or the money collected from them, over the other creditors at the time of the closing of the doors of the Dodge bank.

[1] In respect to the first point made, it is insisted that certain articles of the statute have specific application to the facts, and are decisive of the question presented. First, it appears that authority was given to contract to pledge the bank's bills receivable for the payment of the loan from the Houston National Exchange Bank, by the board of directors of the Guaranty State Bank of Dodge, at a regular meeting at which a written record of the proceedings was made upon the minutes. We think the terms of that resolution are broad enough to grant the power to the officers of the bank to contract the loan, and specific enough to cover the transaction involved in this suit. The resolution is within, and is not contrary to, the terms of article 530, Revised Statutes. Houston Nat. Ex. Bank v. Gregg Co. (Tex. Civ. App.) 202 S. W. 805. The subsequent resolution authorizing the pledge of securities to the War Finance Corporation for a loan to the bank did not operate to make void, especially in the facts of this case, the contract of loan and pledge with the Houston National Exchange Bank. The officers of the Guaranty State Bank of Dodge had authority, under the resolutions of the board of directors, to borrow money from each banking institution, and pledge collateral security therefor; and the latter resolution did not rescind the first resolution, nor undertake to annul or withdraw the authority conferred upon the officers of the bank. Article 530 does not, in terms nor by intention, forbid the directors to authorize the bank to borrow, and pledge collateral security therefor, from more than one banking institution. The authority conferred by the article is intended to be general, consistent with the legitimate business and limits of a banking institution, and when once expressly given to the bank officers, such authority will continue until expressly or impliedly revoked, or until the purpose for which it is to be exercised is effectively accomplished.

[2] Next, as applied to the special facts of

this case, the contract of loan and pledge with the Houston bank would not be legally ineffective, it is thought, merely because the agreement contained no stipulation, as required by article 570, Revised Statutes, that the Commissioner of Insurance and Banking should have 30 days of grace in which to redeem the securities pledged. For the note in this case was due and payable in 30 days from its date of December 16, 1921. The commissioner took over the bank on January 6, 1922. Consequently, as a matter of law, he actually had, in the terms of the article, "a grace of 30 days after date of such possession," and "before such pledge or hypothecation shall have been actually foreclosed," in which "to redeem such securities so hypothecated or pledged by the payment of the amount due, as principal and interest, on the indebtedness." A contractual stipulation, in terms of the statute, could have accomplished no more.

[3, 4] Further, it is concluded that it cannot be held in this case, in view of the particular facts, that article 554, Revised Statutes, has application, in avoidance of the contract of loan and pledge. While the proof is quite clear that in December, 1921, the Dodge bank was struggling with serious financial difficulties, yet the evidence is conflicting as to whether or not the bank was at that time in a condition of solvency and good credit. There is involved in the judgment of the trial court the finding of fact that the bank was not in failing circumstances at the time of the agreement for the loan of $3,000, and the pledge of securities therefor. This court would be bound, on appeal, by the trial court's finding in that respect, such finding having evidence to support it. Especially so since the decision of the commissioner as to the fact of solvency or insolvency of the bank at the time he proceeded to take over its affairs was not final and conclusive, according to the terms of article 473, R. S., as it then read. And no separate question as to the personal liability of the officers of the bank in creating and assenting to such contract of loan and pledge is involved on this appeal, since the pleading of the plaintiff in error does not seek judgment against them personally on the debt charged to have been created. The article (554) seeks to impose personal liability upon the officers, for the recovery of which "suits" shall be specially brought against them. The plea in the instant case was merely in the nature of avoidance of the contract, and not by way of cross-action against the officers for the amount of the contract loan and pledge.

[5] The second point stated in the propositions, as set out above, is entirely dependent upon the precise facts established and the legal effect attaching thereto. It appears that there was an actual delivery on December 16, 1921, to the Houston National Exchange Bank of the collection of the bills receivable of the Guaranty State Bank of Dodge. The delivery was made of all the bills receivable to enable the Houston bank to select therefrom bills suitable as collateral security to the value of $4,500. It was the intention of the officers of the Dodge bank that the Houston bank should retain the possession, and hold as a pledge, the bills selected to the value of $4,500, and it was the intention of the Houston bank to acquire and hold possession of them as a pledge. While a time was not fixed within which the Houston bank should make the selection of its securities and return the other bills, yet it was contemplated by the parties that a reasonable time should be given and allowed the Houston bank to examine and select its securities. In such facts, as far as stated, it is obvious that the Guaranty State Bank of Dodge had parted with the possession, and the Houston National Exchange Bank was in actual possession, of the bills receivable, and there remained only the formality of separating the bills to the extent of $4,500 to complete a pledge of them, taking its origin at that time. By the delivery of the bills receivable the Guaranty State Bank of Dodge had fulfilled its agreement for a pledge of them, and there remained nothing more for such bank to do under its agreement. The Houston National Exchange Bank, by its possession of the bills receivable, assumed control of them, and, legally, had all the privileges respecting them necessary to give the character of a pledge. The Houston National Exchange Bank could hold such possession of bills receivable to the value of $4,500 by way of collateral security for the loan of $3,000, already credited to the Guaranty State Bank of Dodge, in the character of a pledge against both the latter bank and its creditors. A valid objection would not exist, in the circumstances, against such rightful possession that the mere formality of separating the particular securities from the mass of bills receivable had not been complied with. A reasonable time was allowed, by the agreement of pledge, to the Houston National Exchange Bank within which to make separation of the securities in its possession, and such bank had a reasonable time to make such selection and separation. Therefore there existed in the Houston National Exchange Bank legal claim or right in the bills receivable to the value of $4,500, valid as well against third persons as against the pledgor, if made in good faith, as appears here. But it further appears that, pending the time of examination and before selection of securities, the president of the Dodge bank requested that all bills receivable be sent him to forward to the War Finance Corporation for examination and inspection, under a prearranged agreement to do so. The Houston bank sent all the bills receivable to the pres-

ident of the Dodge bank, with the understanding and upon condition that it was for the special and temporary purposes indicated, and that he would return them direct to the Houston bank, in the event the War Finance Corporation did not make the loan. The president of the Dodge bank received the securities under that agreement, and only for the purpose stated. Pending notice from the War Finance Corporation as to the day convenient for submission of the bills receivable for inspection, the president of the Dodge bank placed them in the vault of the bank for safe-keeping. Before the notice was received from the War Finance Corporation, the doors of the Dodge bank were closed, and the state commissioner took the bills receivable into his charge and control as assets of the Dodge bank. In these facts it is clear that the Houston National Exchange Bank was not in default in designating and setting apart bills receivable, to the value of $4,500, within a reasonable time. Consequently, the precise question is that of whether or not the redelivery of the bills receivable to the president of the Dodge bank, for the special and temporary purpose of permitting the War Finance Corporation to examine and inspect them, legally operates to deny to the Houston National Exchange Bank the privilege of a pledgee, or of an equitable lienholder of the securities. In the case of Bank v. Gregg County (Tex. Civ. App.) 202 S. W. 805, it was held by this court, through Justice Hodges, that the lending bank had an equitable lien, enforceable against the borrowing bank and its creditors, upon bills receivable agreed to be transmitted and delivered to the lending bank by the borrowing bank, but never sent to the former by the latter. The principle of that case has, we think, immediate application to the instant case, in authorizing the claim of an equitable lien on the bills receivable. It is to be observed that the defendants in error only assert a claim of an equitable lien. The mere fact that there was a necessity for selecting and separating the securities would not make void, in the circumstances, the equitable right and claim of the Houston National Exchange Bank in such securities. The Houston National Exchange Bank was not in default in making the selection and separation of the securities; and, under the undisputed facts, the right of the Houston National Exchange Bank to make the selection and separation of the securities was not divested out of it by the mere fact of redelivery of the same to the president of the Guaranty State Bank of Dodge for the special and temporary purposes indicated in the evidence. The evidence is conclusive that there was not a positive, unconditional redelivery of the possession of the securities to the president of the Guaranty State Bank of Dodge. By intention of the parties, the president of the

Guaranty State Bank of Dodge was to be only a special bailee, temporarily, of the returned securities. In Casey v. Cavaroc, 96 U. S. 467, 24 L. Ed. 779, cases in point are reviewed. Quoting from that case:

"The pledgor may have the temporary possession of the pledge, as special bailee, without defeating the legal possession of the pledgee; but where the thing pledged has never been out of the pledgor's actual possession, but has always been subject to his disposal, by way of collection, sale, substitution or exchange, no pledge or privilege exists, as to third persons."

Under the facts, we think the Houston National Exchange Bank had an equitable lien on the securities in question to the value of $4,500, and taking its origin from the date of the actual delivery of the bills receivable on December 16, 1921. As assignees, the defendants in error can assert the rights of the Houston bank.

[6] The third point stated in the propositions, as set out above, cannot, as we conclude, be sustained. The equitable lien held by the defendants in error is legally valid, as well against third persons as against the Guaranty State Bank of Dodge. The Commissioner of Insurance and Banking, in the nature of a receiver, does not represent the bank alone; he represents all the parties. He represents the law, which takes charge of the property for the benefit of all creditors, according to their respective and mutual rights. He holds the same property taken over by him, subject to the same equities as the debtor bank held it, and any transaction which would be binding on the latter would be binding on the commissioner, as receiver appointed by the law. As the Houston National Exchange Bank could, as against the Guaranty State Bank of Dodge, had it not been taken over by the commissioner, have laid its hands on the securities in question, and claimed them in virtue of the contract of pledge, the commissioner, having no higher legal right than the pledging bank, could interpose no legal objection to the claim of the Houston National Exchange Bank. The right of the Houston National Exchange Bank, or its assignees, to make the particular selection of securities, to the value of $4,500, continued to the time the commissioner took charge, and to the time of the trial of this case, not having legally lost such right in this case. It can be assumed that the securities, reduced to money, would have been selected, and that the trial court, in awarding a preference claim on the assets, so found.

The right of the defendants in error to make the selection, as against the commissioner, would not be defeated by article 5655, R. S., as claimed by plaintiff in error, because that article does not have application to this case. That article, as is manifest, relates only to written instruments intended to operate as a mortgage or lien upon per-

sonal property, and has no application to parol contracts such as that upon which this suit is based. And further, the lien given by article 487 to the state for the benefit of the depositors' guaranty fund does not attach and become fixed until "such bank or trust company is legally · closed." The lien of the state attaches, by the terms of the article, to "all the property and assets then in possession of such bank or trust company," meaning all the property and assets then rightfully in possession of the bank. If the assets were not, as here, to the extent of $4,500, rightfully in the possession of the bank at the time it was legally closed, the lien of the state would not attach thereto in preference to the creditor entitled to actual possession of them under a prior pledge thereof.

[7] The remaining proposition, in view of the evidence, will be overruled. The evidence does not show that among the bills receivable submitted to the Houston bank were renewals, the originals of which had not been surrendered to the makers, and, even so, the pledge would not be ineffective as to void bills, no fraudulent act intended, as here appearing.

The judgment is affirmed.