**WILLIAM CLAY, JR. FOUNDATION**

v.

**UNITED STATES of America.**

**Civ. A. No. 4–63–30.**

United States District Court
N. D. Texas,
Fort Worth Division.
June 29, 1964.

Lattimore & Lattimore, Brooks, Tarlton, Wilson & Gilbert, Fort Worth, Tex., for plaintiff.

Stanley Krysa, Tax Division, Department of Justice, Fort Worth, Tex., for defendant.

BREWSTER, District Judge.

William Clay, Jr., Foundation has brought this suit seeking a refund of income taxes for the fiscal year ending March 31, 1960, and interest alleged to have been erroneously assessed and collected from it.

This Court has jurisdiction of the parties and the subject matter. 28 U.S.C.A. § 1346(a) (1).

The question presented is whether the Foundation received adequate security within the meaning of Section 503 of the Internal Revenue Code of 1954 and the Treasury Regulations promulgated thereunder in a transaction by which it loaned $10,000.00 to Management Trust Company, a corporation controlled by its founder.

William Clay, Jr. Foundation was created by W. J. Clay and his wife as a lasting tribute to their deceased son whose name it bore. The parties hereto have stipulated that except as the matter may be influenced by the loan here involved, the Foundation was at all pertinent times organized and was being operated exclusively for charitable and educational purposes in such manner as to be exempt from federal income taxes.

At all times material to this case, W. J. Clay and wife were moderately wealthy and had on hand a considerable surplus of idle cash. They were responsible for all of the corpus that was put into the Foundation. One of the principal sources of income of the Foundation was from interest on money loaned by it. During all of its existence, it was in good financial condition, and it was looking for loans on the date of the transaction in question.

The Management Trust Company, which borrowed the money, was a corporation organized, owned and operated by W. J. Clay for the purpose of holding and managing extensive real estate consisting to a great extent of farm properties. At the time of the $10,000.00 loan, as well as at all other times covered by the evidence, the Trust Company was in sound, solvent financial condition. It had a net worth of several hundred thousand dollars and owed little money, but it needed $10,000.00 cash in December, 1954. W. J. Clay and wife had the money to make the loan themselves, and it would have been to their personal advantage to do so; but they let the Foundation lend the money to get the interest.

On December 23, 1954, the Foundation loaned the Trust Company $10,000.00. It was the intention of all parties to the transaction that the loan would be secured by a lien on valuable real estate belonging to the borrower. At the time the money was advanced, the Foundation received a negotiable, promissory note executed by the Trust Company, due twelve months after date, with interest at 4½% per annum, providing for 10% attorneys fees if not paid and collection was made by an attorney or through legal proceedings. It is here stipulated that the interest provided for was a "reasonable rate of interest", as that term is used in Section 503(c) of the Internal Revenue Code of 1954. The paper work on the loan was handled through the certified public accountant who attended to the tax matters for the Clays. He prepared and the Trust Company delivered to the Foundation as a part of the loan transaction the following instrument:

"Fort Worth, Texas—Jan. 5, 1955
"The Wm. Clay, Jr. Foundation
"W. T. Waggoner Bldg.,
"Fort Worth, Texas.
"Gentlemen:
"In consideration of your advancing to this corporation the sum of $10,000.00, which is the balance due on a certain note for $20,500.00, being for Trust No. One, and being the amount which should be charged against the accounts of Charles H. Brown, Jr., Ann Clay Brown, Mary

Ellen Brown, James Clay Brown, Nancy Lee Brown; and that you should have from us, as Trustee for such beneficiaries, a mortgage on two-thirds undivided interest in the hereinafter described land, and you having paid such sum, we hand you herewith, note of Management Trust Company, dated Dec. 23, 1954, $10,000.00 with interest from Jan. 1, 1944 at 4½ per cent per annum, and do hereby agree with you that on demand, Management Trust Company will execute and deliver to you a recordable Deed of Trust securing such obligation, upon Labors, 2, 3, 8, 9, 12, 13, 18, 19, 22 and 23, in League 267, Moore County School Land, Dawson County, Texas.

"(Actually ⅝ths of the land described above, without any lien whatsoever, is being held as security for your note.)

"MANAGEMENT TRUST COMPANY
"By /s/ W. J. Clay
President
(SEAL)
/s/ David Straiton
Secretary"

It is stipulated that the property mentioned in the letter "was of such value and liquidity that at the time of the loan it could have been reasonably anticipated that loss of principal or interest would not result from the loan, if such loan in law and in fact was secured by such property. At the time the said loan was made Labors 2, 3, 8, 9, 12, 13, 18, 19, 22 and 23 in League 267, Moore County School Lands, Dawson County, Texas, had a fair market value of Two Hundred Twenty Thousand One Hundred Fifty Dollars ($221,150.00)."

The maturity date of the loan was extended by the Foundation, and on April 17, 1958, it was paid in full without having become delinquent. Interest was paid at the rate provided as it became due.

The security for the loan was never in jeopardy, and none of the parties to the loan transaction ever had any intention of jeopardizing it.

The plaintiff timely filed all of the tax returns required by law covering the entire period involved. Upon the audit of such records, the Commissioner determined a deficiency in income taxes for the fiscal year ending March 31, 1960, on the basis that the $10,000.00 loan by the Foundation to the Trust Company was a prohibited transaction within the meaning of Section 503(c) of the 1954 Code and the regulations promulgated thereunder. The plaintiff paid such assessment with interest, and has taken all steps necessary to entitle it to maintain this suit for refund.

Section 503(a) (1) of the Internal Revenue Code provides that a charitable organization of the type there named shall not be exempt from taxation "if it has engaged in a prohibited transaction after July 1, 1950."

The portion of Section 503(c) of the Code which is pertinent to this case reads:

"(c) Prohibited transactions.— For purposes of this section, the term 'prohibited transaction' means any transaction in which an organization subject to the provisions of this section—

"(1) lends any part of its income or corpus, without the receipt of adequate security and a reasonable rate of interest, to

\* \* \* \* \* \*

the creator of such organization (if a trust) \* \* \* "

No definition of the term "adequate security" is given in the statutes, but Section 1.503(c)–1(b) of the Treasury Regulations on Income Tax (1954 Code) describes the term "adequate security" as being something so pledged to the organization that it may be able to look to it without question in the event the borrower defaults in making payment.

The legal principles for determining whether the parties to the $10,000.00 loan created a valid, enforceable

lien on the property of the Trust Company to secure such loan have long been established. They appear in the following statement from 3 Pomeroy's Equity Jurisprudence (4th Ed.) #1235:

"The doctrine may be stated in its most general form, that every express executory agreement in writing, whereby the contracting party sufficiently indicates an intention to make some particular property, real or personal, or fund, therein described or identified, a security for a debt or other obligation, or whereby the party promises to convey or assign or transfer the property as security, creates an equitable lien upon the property so indicated, which is enforceable against the property in the hands not only of the original contractor, but of his heirs, administrators, executors, voluntary assignees, and purchasers or encumbrancers with notice. Under like circumstances, a merely verbal agreement may create a similar lien upon personal property. The ultimate grounds and motives of this doctrine are explained in the preceding section; but the doctrine itself is clearly an application of the maxim, equity regards as done that which ought to be done. In order, however, that a lien may arise in pursuance of this doctrine, the agreement must deal with some particular property, either by identifying it, or by so describing it that it can be identified, and must indicate with sufficient clearness an intent that the property so described, or rendered capable of identification, is to be held, given, or transferred as security for the obligation."

Many cases from state and federal courts over the entire country could be cited to show that the doctrine stated in the above quotation has been generally and consistently accepted, but the following will suffice: Walker v. Brown, 1897, 165 U.S. 654, 664, 17 S.Ct. 453, 41 L.Ed. 865; Ingersoll v. Coram, 1908, 211 U.S. 335, 365, 29 S.Ct. 92, 53 L.Ed. 208; United States v. Butterworth-Judson Corp., 1924, 267 U.S. 387, 393, 45 S.Ct. 338, 69 L.Ed. 672; Burrowes v. Mimocks, 4 Cir., 1929, 35 F.2d 152; Union Trust Co. of Maryland v. Townshend, 4 Cir., 1939, 101 F.2d 903, 909; Houston National Exchange Bank v. Gregg County, Tex.Civ. App.1918, 202 S.W. 805, writ refused; Luse v. Rea, Tex.Civ.App., 207 S.W. 942, 944, affirmed, Tex.Comm.App., 1921, 231 S.W. 310.

The text and the cases cited show that the rule applies to transactions involving either real or personal property.

In Luse v. Rea, supra, affirmed by the Texas Commission of Appeals, the Texas Court of Civil Appeals said at p. 944 of 207 S.W.:

" * * * The record, we think, also very pointedly suggests that an equitable lien against the five and one-half sections of land in El Paso and Culberson counties, Tex., may be enforced to secure payment of these notes. The recitation in the notes themselves that they are secured by a deed of trust lien on said land, and the delivery of the notes by Bennett to Luse, for the purpose of delivery to Mrs. Rea, who was without knowledge that the deed of trust was not in fact executed, would, we believe, authorize a court of equity to decree an equitable lien against said land, notwithstanding no deed of trust was in fact executed. Boehl v. Wadgymar, 54 Tex. 589; Atlanta National Bank v. Four States Grocery Co. [Tex.Civ.App.], 135 S.W. [1135] 1137; Words and Phrases (1st and 2d Ed.) titles 'Equitable Liens' and 'Equitable Mortgages'; Pomeroy's Equity Jurisprudence (3d Ed.) §§ 1235–1237. The doctrine of equitable liens grows out of an application of the maxim of equity 'which regards as done that which ought to be done.' An executory agreement in writing to give a lien on land is thus sufficient to create a lien in equity on such land though the mortgage or lien is itself never executed. * * * ' "

Houston National Exchange Bank v. Gregg County, supra, by the Texas Court of Civil Appeals, is recognized as good authority. The effect of the refusal of a writ of error in that case by the Supreme Court of Texas was that such Court expressly approved the opinion. The case was cited with approval by the Fourth Circuit Court of Appeals in Burrowes v. Mimocks, supra, in an opinion by Judge Parker. The following is quoted from the opinion of the Court of Civil Appeals at pp. 807–808 of 202 S.W.:

> " * * * That an agreement to mortgage designated property, when carried so far that nothing remains undone except the formal execution of the mortgage, may, as between the parties, be treated as creating an equitable lien, is too well settled to require discussion. * * * "

The Supreme Court of the United States, in Walker v. Brown, supra, held that the following letter was sufficient to create an enforceable equitable lien under the rule above quoted from Pomperoy's Equity Jurisprudence:

> "Chicago, Sept. 21st, 1889.
> "Messrs. James H. Walker & Co.,
>    Chicago, Ill.
>
> "Gentlemen: I beg to advise you that the loan of fifteen thousand dollars, Memphis bonds, made by me to Mr. J. C. Lloyd, for the use of Messrs. Lloyd & Co., Ellensburgh, Wash., Ter., is with the understanding that any indebtedness that they may be owing you at any time, shall be paid before the return to me of these bonds, or the value thereof, and that these bonds or the value thereof are at the risk of the business of Lloyd & Co., so far as any claim you may have against said Lloyd & Co. is concerned.
>
>               "Yours, truly,
>               "T. E. Brown."

The letter of January 5, 1955 from Management Trust Company to the William Clay, Jr. Foundation met all of the requirements in the rule announced in the cases cited to give the Foundation an enforceable equitable lien on real estate to secure the $10,000.00 note. Nevertheless, government counsel argues that the Foundation did not have the adequate security required by the statutes and regulations, because the letter was not recordable and therefore the lien could have been defeated through a sale by the Trust Company of the particular land to an innocent third party without notice. A similar argument could be made in most cases involving formal deeds of trust or mortgages. In all but the most exceptional cases, there is always an interval varying from one to twenty-four hours between the time of closing a loan and the time that the formal deed of trust or mortgage is filed of record, depending on whether the instrument is transmitted to the courthouse by person or by mail. Conceivably, the mortgagor in most of those cases could sell the real estate to an innocent purchaser for value without notice. The fact that a lien is created by a non-recordable instrument should not be ignored; but it should not in and of itself defeat the actual truth. Transactions where security is not evidenced in conventional form should be scrutinized with great care to determine whether there is in fact adequate security for a loan, or whether the transaction is a sham simulated to cover up a prohibited transaction. Until there is something in the statutes and regulations requiring a formal legal instrument creating the security, the informality of the instrument and its ineligibility to be recorded should be considered along with all the other facts to determine that question. Each case can be judged safely on its own facts.

The parties involved in this transaction in absolute good faith intended for the Foundation to have a lien on the real estate of the Trust Company to secure the $10,000.00 loan; and they did create a valid, enforceable lien for that purpose. While it would have been better if Mr. Clay had gone to a lawyer to prepare the evidence of the security, he honestly believed that the certified public accountant who was handling the matter was capable of preparing the necessary written in-

strument, and that the letter of January 5, 1955, was adequate. There was never any purpose to evade the letter or the spirit of the statutes or regulations. Mr. Clay was not trying to benefit personally from the loan, either directly or indirectly, or to unload something undesirable upon the Foundation. He was trying to help it by giving it an opportunity to get some interest income without any risk of loss. There are no facts in this case which intimate the existence of any of the well-known evils sought to be remedied by the statutes here involved.

The evidence in this case has been carefully scrutinized and weighed, and the conclusion is reached that the Foundation got adequate security and a reasonable rate of interest for its loan, and that the transaction here involved was not prohibited within the meaning of Section 503 of the 1954 Code. The plaintiff is therefore entitled to a refund of the taxes in question.

This opinion will serve as findings of fact and conclusions of law under Rule 52(a), F.R.Civ.P.

Judgment will be entered for the plaintiff in accordance with these findings.